COMMONWEALTH vs. ROBERT LEE STEPHENS.

No. 87-275.

Suffolk.   October 19, 1987. — December 2, 1987.

Present: GREANEY, C.J., DREBEN, & SMITH, JJ.

*Civil Rights,* Criminal prosecution for violating rights. *Due Process of Law,*
    Vagueness of statute. *Evidence,* Intent.

General Laws c. 265, § 37, which provides criminal penalties for violation
    of a person's civil rights is not unconstitutionally vague with regard to
    the specific intent necessary for conviction, where that element is defined
    by the statute's requirement that there be *wilful* interference with a
    victim's free exercise or enjoyment of a right or privilege secured by
    the Federal or State Constitution. [120-123]
Evidence presented in a prosecution for violations of G. L. c. 265, § 37,
    was sufficient to warrant findings by the jury that the victims were
    subjected to violence motivated by the fact they were Cambodians, while
    in the exercise of their civil rights guaranteed by Federal and State law.
    [123-124]
Evidence presented in a prosecution for violation of G. L. c. 265, § 37,
    was sufficient to establish that the defendant committed acts designed
    to interfere with the Cambodian victims' exercise of their civil rights
    and that the defendant's conduct was motivated by his hatred of Cambo-
    dians. [124]
Evidence presented in a prosecution for violations of G. L. c. 265, § 37,
    was sufficient to warrant a finding that the defendant's conduct was
    wilful, that is, that he acted with a specific intent to deprive the Cambo-
    dian victims of their civil rights because of his dislike of Cambodians.
    [125]

INDICTMENTS found and returned in the Superior Court De-
partment on December 6, 1985.

The cases were tried before *Katherine Liacos Izzo,* J.

*Judd J. Carhart* for the defendant.

*Laura Jo Callahan,* Assistant District Attorney (*James S.
Hamrock, Jr.,* Assistant District Attorney, with her) for the
Commonwealth.

GREANEY, C.J. A jury in the Superior Court convicted the defendant on three indictments charging him with violating the civil rights of three Asian persons.[1] See G. L. c. 265, § 37. Represented by new counsel on appeal, the defendant argues (1) that G. L. c. 265, § 37, is unconstitutionally vague and (2) that the evidence elicited at the trial was insufficient to support his convictions under the statute. We affirm.

The evidence viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Campbell*, 394 Mass. 77, 82 (1985), permitted the jury to find the following facts. In June, 1985, five Cambodian families were living in a multifamily dwelling at 9 Walnut Place, Revere. Two families were on the first floor, two families were on the second floor, and one family was on the third floor. They were the only Cambodian families living on Walnut Place at that time. By the time of trial, the families had moved.

Prior to June, 1985, Samath Chap, a resident of 9 Walnut Place, called the police several times because unidentified persons were throwing rocks at the windows of the building. After breaking the windows, the persons would flee before the police arrived. However, Chap had often seen the defendant in the neighborhood. About two months before the incidents involved in this case, the defendant called Chap "a fucking Cambodian."

On June 14, 1985, Samoeun Nol, age sixteen, was walking from his home at 9 Walnut Place to visit a friend. As he walked by a group of about ten white teenagers, Dan Mullaney, a white person whom Nol knew from school, threw a can of beer at him. Later that evening, when Nol and his friend were walking to Revere Beach, someone in a crowd of white teenagers, which included Mullaney, threw a can of beer at Nol and his friend. Nol's friend told him — "Don't say anything. Let's go to the beach" — and the two young men walked on.

---

[1] Two of those convictions were placed on file. The defendant was also convicted and sentenced on three other indictments. The first indictment charged him with assault and battery by means of a dangerous weapon, and the second charged him with assault by means of a dangerous weapon. He has not argued his appeals from those convictions. A third conviction of assault and battery was placed on file.

On his way back from the beach, Nol saw Mullaney on the property adjoining 9 Walnut Place and several other white persons in the parking lot nearby. Nol went inside to his family's apartment, grabbed his slingshot, and hit Mullaney in the back with a marble. Shortly after midnight on June 15, Mullaney; the defendant, a white person aged twenty-six; and several other white men approached 9 Walnut Place. After the group of white men arrived, Savorn Pech, a Cambodian woman, was aroused by the sound of breaking glass. Two windows and a screen in her apartment were broken. She, in turn, awakened her husband, Nol Pech, who asked Chap, a neighbor who spoke English, to call the police. One of the whites was observed throwing a trash barrel against the dwelling.

Meanwhile Nol, who had also heard the sound of breaking glass, ran downstairs and opened the door to 9 Walnut Place. Nol saw two or three men standing in the driveway and on the sidewalk. He asked the men what they were doing, and a big man, later identified as the defendant, walked up the stairs while Mullaney said, "Hit him. He's the one who shot me." The defendant asked why Nol had hit his friend. He then punched Nol in the face, and Nol fell to the porch floor.

Nol got up and ran upstairs to his father, who had also been awakened by the sound of shattering glass. Nol and his father then went down to Chap's apartment on the second floor. Chap owned a camera. Chap, with his camera, Nil Por and Samoeun Nol then ran downstairs. When Nol opened the front door, five or six white men were standing near the front and side of the house. Three of them, including the defendant, now held sticks.

Chap tried to take pictures from the front porch with his camera, but it was too dark and he was standing too far away from the white men. Chap told Nil Por and Samoeun Nol to protect him while he moved closer to the group of white men. Chap proceeded towards the front of the house, where he took several photographs of the defendant and others. While Chap was focusing his camera to take a picture of the defendant, the defendant swung a stick at Chap. Nil Por grabbed the stick

before it hit Chap. Chap took a photograph of the defendant and Nil Por struggling for control of the stick. Nil Por finally tore the stick from the defendant's hands and threw it to the ground. The defendant backed away. Someone threw the defendant another stick, and the defendant charged at Por. At that instant, police sirens were heard. The defendant threw the stick at Por and ran away. The stick hit Por's chest, which started to bleed. By the time the police arrived, the group of white men had fled.

1. The defendant argues that G. L. c. 265, § 37, is unconstitutionally vague because it does not provide fair warning of the nature of the conduct it prohibits.

A criminal statute is unconstitutionally vague "if it fails to provide a reasonable opportunity for a person of ordinary intelligence to know what is prohibited or if it does not provide explicit standards for those who apply it." *Commonwealth* v. *Jasmin,* 396 Mass. 653, 655 (1986). See also *Smith* v. *Goguen,* 415 U.S. 566 (1974). These criteria do not require that the Legislature attain impossible standards of definiteness which describe with utmost precision the categories and subcategories of criminal conduct. See *Commonwealth* v. *Williams,* 395 Mass. 302, 304 (1985). Moreover, the fact that close questions may arise under a statute from time to time, or the fact that there may be uncertainty whether marginal offenses are included within a statute, will not make the statute impermissibly vague if the scope of the statute is substantially clear. See *Commonwealth* v. *Bohmer,* 374 Mass. 368, 372 (1978); *Opinion of the Justices,* 378 Mass. 822, 826-827 (1979).

No Massachusetts decision has dealt directly with a vagueness challenge to G. L. c. 265, § 37, inserted by St. 1979, c. 801, § 2.[2] That statute appears to be patterned in its language,

---

[2] "No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate or interfere with, or attempt to injure, intimidate or interfere with, or oppress or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the commonwealth or by the constitution or laws of the United States. Any person convicted of violating this provision shall be fined not more than one thousand dollars or imprisoned not more than one year or both; and if bodily injury results, shall be punished by a

at least in important general concepts, upon a long-standing Federal criminal civil rights statute, the present version of which is contained in 18 U.S.C. § 242 (1982).[3] The Federal statute punishes a defendant who, acting under color of State law, deprives a person of a protected right. Both G. L. c. 265, § 37, and 18 U.S.C. § 242 require that a defendant act "willfully" before a conviction can be had.

A constitutional challenge on the ground of vagueness to a predecessor of the current Federal statute was considered by the United States Supreme Court in *Screws* v. *United States,* 325 U.S. 91 (1945). It was stated in that opinion (at 101) that "the requirement of a specific intent to do a prohibited act may avoid . . . consequences to the accused which may otherwise render a vague or indefinite statute invalid." Further, the word "willfully" in the Federal statute was interpreted as connoting a purpose by a defendant charged thereunder to deprive a person of a specific constitutional right, "made definite by decision or other rule of law." 325 U.S. at 103. The construction of the Federal statute as creating a specific intent crime cured any problem of vagueness presented by the statute. As was noted in the *Screws* decision, a defendant who acts "willfully" is "under no necessity of guessing whether the statute applies to him . . . for he either knows or acts in reckless disregard of [the statute's] prohibition . . . 'A mind intent upon willful evasion is inconsistent with surprised innocence.'"[4] 325 U.S. at 104, quoting from *United States* v. *Ragen,* 314 U.S. 513, 524 (1942).

fine of not more than ten thousand dollars or by imprisonment for not more than ten years, or both."

[3] "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000. or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life."

[4] The specific intent requirement set forth in *Screws* v. *United States* was discussed more fully in *United States* v. *Ehrlichman,* 546 F.2d 910, 921 (D.C. Cir. 1976), cert. denied 429 U.S. 1120 (1977), as follows:

We adopt this reasoning of the *Screws* decision and apply it to G. L. c. 265, § 37, which also requires for conviction that a violator "willfully" interfere with a victim's free exercise or enjoyment of a right or privilege secured by the Constitution or laws of the United States or by the Constitution or laws of the Commonwealth. We discern nothing in the three principal distinctions between G. L. c. 265, § 37, and 18 U.S.C. § 242 which would change this conclusion.[5] By construing G. L. c. 265, § 37, as defining a specific intent crime in the manner

> "Although some of the language in *Screws* can be read more broadly, its holding essentially sets forth two requirements for a finding of 'specific intent' under section 242. The first is a purely legal determination. Is the . . . right at issue clearly delineated and plainly applicable under the circumstances of the case? If the trial judge concludes that it is, then the jury must make the second, factual, determination. Did the defendant commit the act in question with the particular purpose of depriving the victim of his enjoyment of the interests protected by that . . . right? If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted 'willfully'—i.e., 'in reckless disregard of constitutional [or statutory] prohibitions or guarantees.'"

We think this definition of the mental element required for the Federal crime is reasonable, and we consider it applicable to the intent element set forth in G. L. c. 265, § 37. We shall apply these considerations to the evidence in this case in part 2 of this opinion.

[5] First, G. L. c. 265, § 37, provides that it can be violated by a person "whether or not [that person is] acting under color of law"; whereas 18 U.S.C. § 242 can be violated only by a person acting "under color of any law." The United States Supreme Court in the *Screws* decision interpreted the words "under color of any law" as involving acts done under the pretense of law and not as purely personal pursuits. 325 U.S. at 111. Thus, the Federal statute applies to violations of Fourteenth Amendment rights which require the prerequisite of State action. *Id.* at 110. See *Civil Rights Cases,* 109 U.S. 3 (1883). General Laws c. 265, § 37, has broader application because it applies to private action as well as State action. The fact that G. L. c. 265, § 37, may subject a larger group to punishment does not render the statute unconstitutionally vague, because its language makes clear that unlawful private action will be punished. See *Batchelder* v. *Allied Stores Corp.,* 393 Mass. 819, 821-822 (1985). Furthermore, there is no constitutional requirement that civil rights statutes apply only to government action. See, e.g., 18 U.S.C. § 245 (1982) and 42 U.S.C. § 3631 (1982).

Second, G. L. c. 265, § 37, requires proof of force, or threat of force, and more specifically details the acts prohibited (e.g. "injure," "intimidate," "interfere," "threaten," etc.). These requirements add a degree of specificity

discussed, the statute does not become a "catchall" which might cover every possible offense. We hold that the statute is not unconstitutionally vague.[6]

2. The defendant also argues that the evidence was insufficient to show (a) that the victims were exercising or enjoying any rights secured by G. L. c. 265, § 37; (b) that he (as opposed to others) either deprived or attempted to deprive the victims of any secured right in any of the ways proscribed by the statute; and (c) that he acted wilfully.

(a) The case was tried on the basis that the victims had been purposely subjected to violence motivated by the fact that they were Cambodians. The jury were instructed that the victims possessed the full and equal benefit of all the laws that provide for the security and protection of white citizens (see 42 U.S.C. § 1981 [1982]); that art. 1 of the Massachusetts Declaration of Rights provides that all people have the right to be safe and secure and to use their property peacefully; that Federal law guarantees that every person has the right to occupy housing without intimidation or interference through force or threat of force because of the person's race, color or national origin (see 42 U.S.C. § 3631 [1982]); and that State law guarantees that all persons have the right to use public streets and sidewalks free from any discrimination or restriction on account of race, color, or national origin (see G. L. c. 272, §§ 92A and § 98).

The instructions were proper because the judge correctly determined, as matter of law, see note 4, *supra,* that these rights were within the ambit of § 37, that they were firmly

---

to the Massachusetts statute that the Federal statute lacks. Such restrictive language can hardly render G. L. c. 265, § 37, vague.

Finally, the Federal statute includes a provision prohibiting "different punishments, pains or penalties, on account of . . . [alienage] . . . , color or race." This provision has been held to create an additional offense different from a wilful deprivation of a right secured by the Constitution or laws of the United States. See *United States* v. *Classic,* 313 U.S. 299, 326-327 (1941). The absence of a like provision in G. L. c. 265, § 37, has no bearing on the issue of vagueness.

[6] The defendant also argues that G. L. c. 265, § 37, violates the requirements of art. 12 of the Massachusetts Declaration of Rights. We reject the argument for the reasons already discussed.

established, and that they were plainly applicable to the facts as the jury could find them. The evidence was sufficient to warrant findings by the jury that the victims lived in rented units at 9 Walnut Place; that the incidents occurred on the property near 9 Walnut Place and on the adjoining sidewalk and street; and that the incidents were motivated by a hatred of Cambodians. The evidence was also sufficient to warrant findings that the victims were exercising the rights and privileges enumerated above. It was not necessary to prove that the victims actually knew that they had or were exercising rights and privileges protected by G. L. c. 265, § 37. See, e.g., *United States* v. *Ehrlichman,* 546 F.2d at 921.

(b) The evidence was also sufficient to establish that the defendant committed acts which violated the statute (namely, acts designed to intimidate, interfere with, or oppress the victims in the exercise and enjoyment of their protected rights). The jury could reasonably find that the defendant had previously called one of the victims a "fucking Cambodian"; that he was associated with what could roughly be described as a gang of white men which had harassed the victims and other Cambodians; that the gang, including the defendant, marched directly to the dwelling occupied by the Cambodians at midnight on the day of the incident; that one of the white men threw a trash barrel at the dwelling to wake its occupants while others broke windows; that members of the gang were armed with sticks; that the defendant was armed; and that the defendant assaulted three of the victims and fled when he heard the sirens of approaching police cars.

Although there was some indication that the defendant's conduct may have been intended in part as retaliation for Samoeun Nol's hitting the defendant's friend, Dan Mullaney, with a marble earlier in the evening, the jury reasonably could find that the defendant was also acting out of hatred of Cambodians. The deprivation of civil rights contemplated by G. L. c. 265, § 37, does not have to be the predominant purpose of the defendant's acts. *United States* v. *Ehrlichman,* 546 F.2d at 928 n.82. *United States* v. *Barker,* 546 F.2d 940, 945-946 (D.C. Cir. 1976).

(c) The evidence was also sufficient to warrant a finding that the defendant acted wilfully. All the attendant circumstances can be considered by the jury in deciding the mental element of the offenses punished by G. L. c. 265, § 37. *Screws v. United States,* 325 U.S. at 107. In order to establish the specific intent required by that statute, it is not necessary to prove that the defendant had a particular evil or wicked purpose. *United States* v. *Couming,* 445 F.2d 555, 557 (1st Cir.), cert. denied, 404 U.S. 949 (1971). Nor is it necessary to show that the defendant actually knew that he was depriving a person of a specific right guaranteed by the Constitution or laws of either the United States or the Commonwealth. See *United States* v. *Ehrlichman,* 546 F.2d at 921. It was enough if it was shown that the defendant "engaged in activity which interferes with rights which as . . . matter of law are clearly and specifically protected by [G. L. c. 265, § 37]". *Id.* at 928. The evidence in this case was sufficient to warrant a finding by the jury, under the instructions of law given them by the trial judge, which correctly described the mental element of the crime, that because of his dislike of Cambodians the defendant acted with a specific intent to deprive the victims of their rights to live peaceably in their homes and to use the public sidewalks and streets without being harassed or assaulted.[7]

The judgments on indictments no. 056080, no. 056082, and no. 056083 are affirmed.

*So ordered.*

---

[7] It follows from the conclusions that we have reached that the defendant has not demonstrated that his trial counsel provided ineffective assistance by not filing a motion to dismiss the indictments on the ground that G. L. c. 265, § 37, was unconstitutionally vague and by not filing motions for required findings of not guilty.