COMMONWEALTH *vs.* VASHAWN LAREAU.

No. 93-P-816.

Hampden. June 13, 1994. - November 25, 1994.

Present: ARMSTRONG, SMITH, & LAURENCE, JJ.

*Evidence*, Prior consistent statement, Recent invention.

At a criminal trial the judge incorrectly allowed in evidence a prior consistent statement of a prosecution witness where the statement was made after the witness's motive to falsify his testimony arose [628-683]; in the circumstances, where the prior statement contained matters beyond the witness's testimony the error was prejudicial and a new trial was required [683-684].

INDICTMENTS found and returned in the Superior Court Department on September 5, 1991.

The case was tried before *Richard F. Connon*, J.

*Andrew Silverman*, Committee for Public Counsel Services, for the defendant.

*Ellen Berger*, Assistant District Attorney, for the Commonwealth.

SMITH, J. A Superior Court jury returned guilty verdicts against the defendant on indictments charging him with trafficking in more than twenty-eight grams of cocaine, assault by means of a dangerous weapon (two counts), possession of a firearm, possession of a Class D controlled substance, and possession of ammunition. On appeal, he raises four issues. Our focus is on one of the issues: whether the judge improperly allowed the prosecution to introduce in evidence a prior consistent statement.

1. *The Commonwealth's evidence.* Part of the evidence came from the prior recorded testimony of Michael Jordan that he gave at the Springfield Juvenile Court. See note 2, *infra.* Michael, who was sixteen years of age at the time he

testified, stated that approximately 12:30 A.M., on May 2, 1991, he went to the defendant's apartment looking for a young woman named Robina who owed Michael money. Although no one was home and Michael did not have permission to go inside, he entered the defendant's apartment. After about five minutes, the defendant entered, and an argument ensued. The defendant accused Michael of having taken his drugs. The defendant pulled out a handgun and pointed it at Michael, whereupon Michael left the apartment and went home.

David Jordan, Michael's brother, testified that on May 1, 1991, he was in his second-floor apartment, which he shared with Michael and their sister and mother. Shortly after midnight on May 2, 1991, David heard yelling coming from the sidewalk outside. The defendant, Debra (Michael and David's sister), and Robina were quarrelling. David went outside and asked the defendant why they were arguing. The defendant produced a gun and pointed it at David's face. David ran back into his apartment and called the police. Before the police arrived, David went back outside carrying a golf club. When the police came, the defendant ran behind his apartment building.

Michael and David's mother testified that she confronted the defendant after her daughter had informed her that the defendant had pulled a gun on David. She testified that the defendant did not deny pulling a gun but rather informed her that he was just "playing with David."

The Commonwealth introduced evidence that David informed the police where the defendant had last been seen. The officers went into the back yard of the defendant's apartment building. They heard a "rustling" sound, followed by the sound of someone running up the stairs. The police entered the defendant's apartment and found him hiding in a closet. A brief investigation in the back yard uncovered a bag of crack cocaine, a bag of marihuana, and a .38 caliber pistol piled together and partially obscured by leaves. Both

Michael and David identified the gun as the one the defendant had pointed at each of them.[1]

2. *The defendant's evidence.* The defense claimed that, at all relevant times, the defendant did not have a gun in his possession and, therefore, never pointed it at Michael or David. In particular, the defense sought to establish that Michael had fabricated his story of the May 2, 1991, incident.

Michael and David's sister testified that at a time prior to the May 2 incidents she and the defendant had been romantically involved. About 12:30 A.M., on May 2, 1991, she saw the defendant near her home and began to argue with him. Her brother David came downstairs and also began to argue with the defendant. David was drunk, and she sent him back into the house. He returned, carrying a golf club, and threatened the defendant. The defendant left and went to his house. She testified that at no time did she see the defendant pull out a gun and point it at David. She did not see any crack cocaine or marihuana.

A friend of Michael and the defendant testified that he was at the defendant's apartment when Michael was there. Michael and the defendant quarrelled. At no time did the friend see the defendant point a gun at Michael. Later, the friend observed the confrontation between the defendant and David. The friend corroborated the alleged victims' sister's testimony that the defendant never pointed a gun at David.

The defendant introduced in evidence, as a prior inconsistent statement, a written statement of Michael, dated December 24, 1991.[2] According to Michael's statement,

---

[1]The gun was loaded, supplying the basis for the indictment charging the defendant with possession of ammunition.

[2]The charges against the defendant were initially brought by way of delinquency complaints filed in the Springfield Juvenile Court. Following a hearing conducted pursuant to G. L. c. 119, § 61, a judge ordered the dismissal of the delinquency complaints and directed the defendant be bound over for possible indictments.

Michael testified in the Juvenile Court as a Commonwealth witness at a "Part A" transfer hearing conducted in the defendant's case. At the Superior Court trial, however, Michael asserted his privilege against self-incrimination. The basis for his claim was that he had given a statement

"[s]ometime in March or April of 1991, I had an argument with [the defendant] . . . over a girl." After that argument, Michael and the defendant became "enemies," and Michael vowed to get even with the defendant. According to Michael's statement, "On May 2, 1991, I had an another argument with [the defendant]. This argument got really crazy, and someone called the police. When the police came my brother . . . and myself decided to tell the police that [the defendant] had a gun and was dealing drugs. At no time did I see [the defendant] with a gun. He never threatened me with a gun, and I never saw him with drugs. . . . I told the police I saw [the defendant] with the gun. This was a lie. I did say it only to get [the defendant] put in jail."

3. *The prior consistent statement issue.* After the defendant introduced in evidence Michael's just quoted statement, the Commonwealth, on rebuttal, called as a witness a police officer who had taken a two-page statement from Michael on May 2, shortly after the defendant had been arrested. The Commonwealth offered the statement as a prior consistent statement. This statement essentially tracked Michael's testimony (see note 2, *supra*). It, however, contained additional material in regard to the defendant's alleged assault on David. The defendant claims that the admission of the prior consistent statement was error.

"The general rule is that a witness's prior consistent statement is not admissible, even though the witness's prior inconsistent statement has already been admitted. The reason for that rule is that evidence that a witness has given an out-of-court account of an event . . . that contradicts his in-court testimony fairly warrants an inference that the witness is un-

---

recanting his Juvenile Court testimony, and, if he testified in the Superior Court in line with his recantation statement, that testimony might give rise to a perjury prosecution. The judge upheld Michael's claim and ruled that, because Michael was unavailable to testify, the Commonwealth could introduce in evidence his prior recorded testimony.

The "prior" inconsistent statement introduced by the defendant, the recantation statement, was made by Michael more than six months after he had testified in the Juvenile Court. It was a "prior" statement only in the sense that it was made prior to the introduction of Michael's Juvenile Court testimony at the trial in the Superior Court.

reliable, and that inference is not dissipated by the fact that the witness has also given another out-of-court statement that is consistent with his testimony." *Commonwealth* v. *Brookins*, 416 Mass. 97, 102 (1993). "As an exception to this general rule, however, a witness's prior consistent statement is admissible where a claim is made that the witness's [testimony] statement is of recent contrivance or is the product of particular inducements or bias." *Commonwealth* v. *Healey*, 27 Mass. App. Ct. 30, 34 (1989). Here, the defendant did claim that Michael's testimony was the product of bias. Under the exception to the general rule, however, Michael's May 2 statement to the police would be admissible as a prior consistent statement only if it was "made before [the witness] became subject to the bias or pressure that is claimed to have influenced his testimony." *Commonwealth* v. *Brookins*, *supra* at 103.

According to Michael's recantation statement, his motive (antagonism toward the defendant) to falsify his testimony arose prior to the May 2, 1991, incidents. Therefore, his statement to the police, offered by the Commonwealth as a prior consistent statement, was made *after* and not *before* his motive to falsify came into existence. This matter is similar to *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. 756, 759 (1985). In that case, we held that the complainant-witness's prior consistent statement to a doorman that he had been robbed was not admissible because it was made after and not before the alleged motive to falsify testimony came into existence. Likewise, here, the witness's statement to the police was made after his alleged motive to falsify testimony — to get even with the defendant by accusing him falsely — came into existence, and thus the statement is also not admissible.

Its admission, moreover, was not harmless error. "[U]se of prior consistent statements [to rebut the appearance of contrivance] should be allowed only with caution, and where the probative value for the proper purpose is clear, because of the ever present danger that the jury will, despite instructions, consider the prior consistent statement as evidence of the facts therein asserted." *Commonwealth* v. *Darden*, 5

Mass. App. Ct. 522, 528 (1977). That danger was present here because in his police statement Michael included details of the defendant's alleged assault on David, explicit threats by the defendant to Michael, and Michael's assertion that he was in fear — matters that went beyond his testimony. On this record, we rule that it was prejudicial error to permit the introduction of the statement. Further, we think that, given the interrelationship of the indictments, the effect of the error requires that there must be a new trial on all the indictments, including those placed on file.[3]

> *Judgments reversed.*
> *Verdicts set aside.*

---

[3]The three remaining issues raised by the defendant can be briefly addressed. (1) The claim that the indictment charging the defendant with possession of a firearm was defective is without merit. (2) At the time of his testimony, David was in custody, having been arrested on a capias warrant issued when he failed to appear pursuant to a summons. The judge refused to allow the defendant to cross-examine David as to why he was in custody, and the defendant claims error. We need not decide this matter in view of our decision in the case. (3) Finally, at any retrial the jury should be instructed regarding the lesser included offense of simple possession of cocaine.