Commonwealth *v.* Zawatsky.

COMMONWEALTH *vs.* BRIAN R. ZAWATSKY
(and a companion case[1]).

No. 95-P-2061.

Middlesex. May 13, 1996. - October 2, 1996.

Present: PERRETTA, KAPLAN, & KASS, JJ.

*Jurisdiction,* Civil rights, Felony. *District Court,* Jurisdiction. *Statute,* Construction. *Civil Rights,* Availability of remedy. *Assault and Battery by Means of a Dangerous Weapon. Joint Enterprise. Evidence,* Joint enterprise. *Practice, Criminal,* Instructions to jury, Severance, Trial of defendants together, Costs.

Where the second clause of the second sentence of G. L. c. 265, § 37, setting forth the punishment for a violation of civil rights if bodily injury results, describes a felony punishable by imprisonment in excess of five years, the offense is not within the jurisdiction of the District Court [394-396], and a complaint so framed as to charge wilful causing of bodily injury was not within the District Court's jurisdiction [396-398].

Evidence at the trial of a complaint alleging assault and battery by means of a dangerous weapon (shod foot) was sufficient to support the jury's verdict of guilty [398-399]; and with respect to a second defendant the evidence was sufficient to allow the jury to infer that he had participated in a joint venture to assault and batter one of the victims and to violate his civil rights [399].

At the trial of criminal complaints there was no error in the judge's instructing the jury on joint venture where there was sufficient evidence to support submission to the jury of that theory of guilt. [399-400]

At the trial of two defendants on criminal complaints, the judge correctly denied one defendant's motion to sever the trials where there was no *Bruton* issue and where the defenses were not mutually antagonistic. [400]

An assessment of an amount for the Victim and Witness Assistance Fund upon a criminal defendant's conviction pursuant to G. L. c. 258B, § 8, was not an impermissible imposition of costs in violation of G. L. c. 280, § 6, and there is no conflict between those statutes. [400-401]

In a criminal case in which the judge assessed victim and witness fees on a complaint over which the District Court did not have jurisdiction and had assessed the fees on other judgments of conviction that were upheld on appeal, the matters were remanded for further consideration of the allocation of those sanctions, in the discretion of the trial judge. [401]

[1]Commonwealth *vs.* Timothy J. Donovan.

COMPLAINTS received and sworn to in the Concord Division of the District Court Department on January 19, 1995.

The cases were tried before *Paul L. McGill*, J.

*Matthew J. Conroy* for Brian R. Zawatsky.

*James T. Dangora, Jr.*, for Timothy J. Donovan.

*Geraldine C. Griffin*, Assistant District Attorney, for the Commonwealth.

KASS, J. Brian R. Zawatsky and Timothy J. Donovan were convicted in District Court by a jury of what current vernacular calls "gay bashing;" more specifically they were convicted of assault and battery (G. L. c. 265, § 13A), assault and battery by means of a dangerous weapon (a shod foot) (G. L. c. 265, § 15A), and through the use of force interfering with rights secured by the Constitution or laws of the Commonwealth or the Constitution or laws of the United States (G. L. c. 265, § 37).[2] We conclude that the District Court lacked jurisdiction under G. L. c. 218, § 26, to try the civil rights offenses charged under G. L. c. 265, § 37, but we affirm the remaining convictions.

We first outline the facts that the jury could have found, taking the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Zawatsky and Donovan planned to celebrate New Year's Eve on December 31, 1994, at the Stouffer Glen Hotel in Bedford, with some forty friends. Throughout the evening, their party progressed in various rooms that they and their friends had rented, as well as in the hotel's lounge and its corridors.

Bernard Cassidy and Brian DeSanto, sexual partners, were also guests at the hotel, attending a friend's wedding. At the wedding reception, DeSanto quarreled with Cassidy and returned to their hotel room alone. Sometime after midnight, Cassidy returned to their room where the two men argued and Cassidy broke off their relationship. Distraught and weeping, Cassidy left the room and headed for a friend's room, DeSanto following, pleading with Cassidy not to walk away

---

[2]There were two victims. Each of the defendants was found: guilty of an assault and battery on the victim Cassidy and on the victim DeSanto; an assault and battery with a dangerous weapon on Cassidy; not guilty of assault and battery with a dangerous weapon on DeSanto; guilty of the violation of the constitutional rights of both.

and not to ignore him — all this loud enough to be overheard by others in the corridor.

Among those Cassidy and DeSanto passed in the corridor were Donovan, Zawatsky, and some of their friends. Now Cassidy, sensing that he was headed in the wrong direction, reversed course and passed the Donovan-Zawatsky group a second time, DeSanto still in pursuit. The Donovan-Zawatsky group also followed, making, among others, such comments as: "Lovers' quarrel"; "boyfriends having an argument"; "faggots"; and "butt fuckers." Cassidy, several feet ahead, turned a corner and ducked into a vending closet to avoid DeSanto, who, having lost sight of Cassidy, stopped in the corridor outside the vending area. Zawatsky caught up with DeSanto, grabbed him by the shoulder, and turned him around. DeSanto asked, "What are you going to do, hit me?" "Yes, I'm going to hit you, you fucking faggot," responded Zawatsky.

At that juncture, Cassidy emerged from the vending closet, reunited with DeSanto against the common enemy, and told Zawatsky, "Get your fucking hands off him." Unfriendly words followed and soon, while someone grabbed Cassidy from behind and pinned his arms, Zawatsky proceeded to punch Cassidy in the face. Cassidy was pushed to the ground and kicked in the head, face, back, stomach, buttocks, and thigh while his tormentors amused themselves by jeering: "you fucking faggots," "faggots." Zawatsky, who was wearing shoes, delivered at least one kick to Cassidy's head. Donovan grabbed DeSanto and punched him on the side of the head. DeSanto was then pushed against a wall and hit again. Eventually, a member of the Zawatsky-Donovan group pulled Zawatsky off Cassidy and managed to stop the attack. Cassidy and DeSanto left to the sounds of continuing epithets.

1. *Jurisdiction over the civil rights offenses.* During the trial, neither defendant raised an objection to the jurisdiction of the District Court over the civil rights violations, and the defendant Zawatsky presents an objection for the first time on this appeal. Jurisdictional questions, however, may be raised at any time in the progress of a case, including at the appellate level, and, indeed, it is the duty of an appellate court, if it becomes aware of a jurisdictional point, to raise it on its own motion. *Commonwealth* v. *Andler,* 247 Mass. 580, 581-582 (1924). *Commonwealth* v. *Burns,* 8 Mass. App. Ct. 194, 196

(1979). *Commonwealth* v. *Norman*, 27 Mass. App. Ct. 82, 88 (1989). See *Tate, petitioner*, 417 Mass. 226, 230 (1994).

Under G. L. c. 218, § 26, as appearing in St. 1937, c. 301, § 1, the District Court has jurisdiction over "all felonies punishable by imprisonment in the state prison for not more than five years."[3] The punishment clause of G. L. c. 265, § 37, as amended by St. 1979, c. 801, § 2, provides:

> "Any person convicted of violating this provision shall be fined not more than one thousand dollars or imprisoned not more than one year or both; and if bodily injury results, shall be punished by a fine of not more than ten thousand dollars or by imprisonment for not more than ten years, or both."

The language preceding the semicolon describes a misdemeanor, i.e., an offense comfortably within the jurisdiction of the District Court. See G. L. c. 218, § 26, and G. L. c. 274, § 1 (a crime punishable by death or imprisonment in State prison is a felony, all others are misdemeanors). The portion of § 37 after the semicolon in the second sentence provides for more severe punishment — imprisonment up to ten years — should bodily injury result from the underlying infraction. Missing from that last clause is the qualification that the imprisonment be in State prison. In the absence of reference to State prison as the place of confinement, the statute does not, upon first examination, describe a felony, and the jurisdiction of the District Court is secure. Such, however, would not be a sensible reading of § 37. The only sentencing alternative to State prison is to a house of correction,[4] yet a sentence to a house of correction may not exceed two and one-half years. G. L. c. 279, §§ 19 & 23. It follows that a ten-year sentence must be to State prison, not a house of correction. If the last clause of § 37 is not to be a nullity, it further follows

---

[3]The limitation of District Court jurisdiction to felonies punishable by sentences to State prison not longer than five years is not universal. Section 26 expressly confers jurisdiction on the District Court to try certain enumerated crimes for which a sentence in excess of five years may be imposed. Among those is a complaint, such as was tried here, brought under G. L. c. 265, § 15A, assault and battery by means of a dangerous weapon, which carries a potential sentence of up to ten years in State prison.

[4]The so-called "Concord sentence" was eliminated by the passage of St. 1993, c. 432, § 18.

that the words "in state prison" must be read into the statute as following the words "imprisonment for not more than ten years." We are to interpret a statute so as not to defeat its utility, *Simon* v. *Solomon*, 385 Mass. 91, 100 (1982), and take the language after the semicolon in the punishment clause as describing a felony, a felony in this instance punishable by imprisonment in excess of five years and, thus, outside of the jurisdiction of the District Court.

The complaints against the defendants under § 37 charged them, as to each victim, with "wilfully caus[ing] bodily injury or attempt[ing] to injure, intimidate or interfere with [the victim] in the free exercise or enjoyment of his right or privilege secured to him by the constitution or laws of the commonwealth or by the constitution or laws of the United States." As so framed, with inclusion of a charge of bodily injury, the complaint was one that, on the basis of the analysis we have just made, charged a felony punishable by imprisonment for more than five years, and is not within the jurisdiction of the District Court.

The District Court had jurisdiction over the civil rights violation counts nonetheless, the Commonwealth urges, because although the complaints charged the defendants with having done the victims bodily harm, in practice the prosecution omitted the factor of bodily injury from the trial of the case. To shore up that position, the Commonwealth points to its bill of particulars which does not, in so many words, speak of "bodily" injury having resulted. The Commonwealth also asks us to note that the closing argument of the prosecutor did not discuss the bodily injuries to the victims; that the government asked for no instructions on the bodily injury component; and that, indeed, the judge did not instruct on the bodily injury component of the civil rights violation counts. The Commonwealth's effort to drape a shroud over the bodily injuries aspect of the case is not successful. To begin, the complaints, alleging bodily injury, were read to the jury and, as has been said, in the context of subject matter jurisdiction, "[t]he text of the allegation determines the nature of the complaint." *Commonwealth* v. *Lovett*, 374 Mass. 394, 399 (1978). The judge in his preliminary instructions to the jury, outlining what they were about to hear, spoke to injuries inflicted on the victims. In his opening, the prosecutor mentioned that the victims had received injuries in the assault

on them. More potently, the government introduced through a police officer a description of Cassidy's injuries, which included broken facial bones. Cassidy required medical care. Both Cassidy and DeSanto described their bodily injuries to the jury and the prosecution introduced in evidence pictures of Cassidy and DeSanto after the assault, the sole probative value of which was to show how badly they had been beaten up. While it is correct that, in his closing argument, the prosecutor did not dwell on the bodily harm suffered by the victims (rather he emphasized the demeaning nature of the assault and the psychic injury it was bound to inflict), the prosecutor nevertheless reminded the jury of the pictures received in evidence.[5] Finally, the judge imposed two-year sentences on Zawatsky for the civil rights offenses, a length of sentence possible only under the bodily injury component of § 37. On Donovan he imposed a one-year sentence, which could have been under the misdemeanor component, but it is unlikely that the judge would have thought the two defendants were charged differently. The more plausible explanation of the lesser sentence for Donovan is that he seems to have gone about his brutal work less enthusiastically and done less damage.

For the reasons stated, we think the District Court did not have jurisdiction over the civil rights offenses under G. L. c. 265, § 37, and those charges must be dismissed.[6] There is no cause, therefore, to confront the arguments of the

[5]The judge's charge to the jury included injury as an element of the civil rights violations but did not require the jury to find that bodily injury had resulted.

[6]We have considered whether, if the Commonwealth were to agree not to bring a new prosecution for civil rights violations *with* bodily injury, the case might be remanded to the District Court for resentencing on charges of civil rights violations *without* bodily injury, as such an offense is necessarily a lesser included component of a civil rights violation *with* bodily injury. Such a solution has pragmatic appeal; it would close the proceedings and give expression to the moral censure inherent in G. L. c. 265, § 37. In the cases, however, a trial in a lower court on a charge over which that court does not have jurisdiction is a nullity. *Commonwealth* v. *Lovett*, 374 Mass. at 397. More recently, in *Ariel A.* v. *Commonwealth*, 420 Mass. 281, 287 (1995), the court said: "We know of no principle by which a verdict or finding supported by the evidence but rendered by a court lacking capability to try that offense, may be transmuted into a verdict or finding on a lesser offense solely because the court had jurisdiction over the lesser offense." See also Smith, Criminal Practice and Procedure § 1308 n.3 (Supp. 1996). Both cases discuss the point in the process of fending off claims of

defendants that the offenses committed by the defendants were not within the compass of G. L. c. 265, § 37. We do not intimate that the offenses did *not* fit within § 37. See, on this subject, our discussion in *Commonwealth* v. *Stephens,* 25 Mass. App. Ct. 117 (1987), upon which the trial judge relied. As to any future offenses of like kind, their inclusion within the scope of § 37 is probably clearer in light of the amendment to G. L. c. 265, § 39, known as the "hate crime" statute, by St. 1996, c. 163, § 2. Section 39 prescribes specific ranges of fines and incarceration for assault or battery with intent to intimidate because of the victim's "race, color, religion, national origin, sexual orientation, or disability." Sexual orientation and disability were inserted by the 1996 amendment as victim characteristics. What was previously implicit is now explicit: persons have a right under the laws of the Commonwealth not to be beaten up because of their sexual orientation. Violence of that kind deprives the victim of a right or privilege secured to the victim under the laws of the Commonwealth and, therefore, violates G. L. c. 265, § 37.

2. *Sufficiency of the evidence.*

(a) *As to Zawatsky having used a dangerous weapon.* A weapon is dangerous under G. L. c. 265, § 15A, because of its inherent capacity to hurt, such as brass knuckles or a firearm, *Commonwealth* v. *Appleby,* 380 Mass. 296, 303 (1980), or because of the manner and circumstances in which it is used. *Id.* at 304-305 (riding crop). *Commonwealth* v. *Durham,* 358 Mass. 808 (1970). *Commonwealth* v. *Rossi,* 19 Mass. App. Ct. 257, 261 (1985)(large ring worn on a hand). *Commonwealth* v. *Marrero,* 19 Mass. App. Ct. 921, 922-923 (1984) (footwear, in that case a sneaker, used to kick the victim). There was evidence that Zawatsky was wearing shoes, that he kicked Cassidy viciously in the head, and that Cassidy suffered head injury. The government was not bound, as Zawatsky seems to suggest, to prove exactly what kind of shoes he was wearing. In *Commonwealth* v. *Mercado,* 24 Mass. App. Ct. 391, 397 (1987), to which Zawatsky looks for sup-

double jeopardy. In each case the defendant had urged that he had been put to trial at least on the lesser included offense. The response of the *Lovett* and *Ariel A.* opinions is that the defendant had not been put in jeopardy at all if tried before a court that lacked jurisdiction over the offense charged. Although the context in this case is different, the doctrine expressed, that a trial in a court without jurisdiction over the charge has no legal significance, is applicable.

port, evidence was lacking that the defendant was "shod" and there was no evidence that the defendant had used his foot with requisite aggression against the victim, i.e., the evidence was that the defendant had used his foot against the victim's torso in the manner of a "nudge."

(b) *As to Donovan's participation in a joint venture.* There was evidence tending to prove the following. Donovan was present when Zawatsky first threatened DeSanto with, "Yes, I'm going to hit you, you fucking faggot," and Donovan then punched DeSanto in the side of the head while Zawatsky busied himself with beating up and kicking Cassidy. Donovan joined with Zawatsky in shouting epithets as they pummeled Cassidy and DeSanto. This was sufficient to allow the jury to infer the elements of what must be proved to make out a joint venture: (1) presence at the scene of the crime; (2) knowledge that another intends to commit the crime; and (3) willingness and agreement to help the other, i.e., sharing with the other the mental state required for the crime. *Commonwealth* v. *Mahoney*, 405 Mass. 326, 327 (1989). *Commonwealth* v. *Phachansiri*, 38 Mass. App. Ct. 100, 110 (1995). The jury "may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Daughtry*, 417 Mass. 136, 139 (1994), citing *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979).

3. *Claim of error in joint venture instruction.* On appeal, Zawatsky claims it was error for the judge to instruct the jury that they might find Zawatsky guilty as a joint venturer with Donovan in the assault on DeSanto. Our record does not disclose any objection to that element of the judge's instructions at trial. Ordinarily the point, therefore, would be lost. Mass. R.Crim.P. 24(b), 378 Mass. 895 (1979). The written transcript, however, was prepared from tape, and the transcript suggests that the postinstruction colloquy between the judge and counsel was not recorded. In an abundance of caution, we will consider Zawatsky's argument that the evidence did not warrant an inference that he shared in Donovan's purpose to hit DeSanto. The evidence is rich with implication to the contrary. Zawatsky's arm was cocked to strike DeSanto when Cassidy reappeared and became the primary target, leaving DeSanto to Donovan and others. The evidence supported an instruction that Zawatsky shared the

mental state to bully the victims, physically and verbally. Nothing is to the contrary in *Commonwealth* v. *Green*, 420 Mass. 771, 779-781 (1995), to which Zawatsky directs our attention. In that case there was no evidence of any other participant in the crime and, therefore, a joint venture instruction was out of place.

4. *Denial of motion to sever.* A motion to sever the trial of a defendant rests in the discretion of the trial judge. *Commonwealth* v. *Clarke*, 418 Mass. 207, 217 (1994). Donovan had made a motion to sever his trial from that of Zawatsky and that motion was denied. There was no antagonism between the defense of Zawatsky and that of Donovan, i.e., they were not pointing fingers at one another. *Ibid.* No issue arose under *Bruton* v. *United States*, 391 U.S. 123 (1968), because Zawatsky testified at his trial and was available to Donovan's counsel for cross-examination. See *Commonwealth* v. *Murphy*, 6 Mass. App. Ct. 335, 340-341 (1978). As earlier discussion has suggested, the government's presentation proceeded on the theory that Zawatsky and Donovan collaborated in committing the same crimes. In such circumstances, joinder for trial is indicated. See *Commonwealth* v. *Clarke*, 418 Mass. at 217.

5. *Assessments of costs against Donovan.* Under G. L. c. 280, § 6, there is a general prohibition against the imposition of costs as a penalty for a crime. See applications of that statute in *Commonwealth* v. *Scagliotti*, 373 Mass. 626, 629 (1977), and *Commonwealth* v. *Casserly*, 23 Mass. App. Ct. 947, 948 (1986).[7] In addition to fines and surfines, which are not in dispute, the judge assessed an aggregate $1,300, broken down on the docket sheet form in boxes labelled "Costs." After each entry, however, the docket clerk made a notation "VW" to signify "victim/witness," i.e., the amounts were assessed for the Victim and Witness Assistance Fund[8] pursuant to G. L. c. 258B, § 8. The provisions of § 8 are cast in the mandatory mode. The statute requires that "[t]he Court *shall* impose an assessment of *no less than fifty dollars* against any person . . . who is convicted of a felony" (emphasis sup-

[7]As those cases call to attention, the statute does permit a court to order a defendant to pay the reasonable expenses of a prosecution as a condition of the dismissal or of the placing on file of a complaint or an indictment, or as a term of probation.

[8]See G. L. c. 10, § 49, and G. L. c. 258B, § 9.

plied). G. L. c. 258B, § 8, as appearing in St. 1989, c. 362, § 1 (entitled "An Act Relative to Victim Assistance"). The "no costs as a penalty" provision of G. L. c. 280, § 6, does not, as Donovan contends, clash with the victim and witness fund assessment provision of G. L. c. 258B, § 8. Even were there a collision, the more recently enacted victim and witness fund provision would trump the former, which has its roots in St. 1890, c. 328, § 1, and took on its current shape (albeit subject to amendment in 1991 and 1994) in 1937. See St. 1937, c. 251, § 1. The even more compelling answer to Donovan's contention is that the assessment for the victim and witness assistance fund is not an "imposition of a cost" in that the amount and purpose of the charge are unconnected with the government's cost of conducting the prosecution against the defendant; rather the levy is directed to a fund affording basic and fundamental rights in the criminal justice system to the victims and witnesses of crimes. See G. L. c. 258B, §§ 3 & 9. Of the $1,300 in victim and witness fees assessed against Donovan, $600 was attributable to the civil rights violation counts and must be vacated. We recognize that in the imposition of sentences, fines, and assessments on multiple counts, a judge necessarily considers the aggregate impact on the convicted party and allocates sanctions to the various convictions. We leave to the discretion of the trial judge whether the $600 of victim and witness fund assessments lost in connection with the civil rights counts should be distributed among the surviving judgments of conviction or whether, on balance, it is best to let the case rest, as the impermissibility of the defendants' conduct has been established and as they have served the periods of incarceration to which they were committed.

The judgments of conviction based on charges under G. L. c. 265, § 37, shall be set aside. The judgments of conviction for the several counts of assault and battery and assault and battery by means of a dangerous weapon are affirmed.

*So ordered.*