Commonwealth *v.* Kindell.

## COMMONWEALTH *vs.* EROY KINDELL.

No. 96-P-485.

Plymouth. October 21, 1997. - January 26, 1998.

Present: WARNER, C.J., KASS, & LENK, JJ.

*Evidence,* Prior consistent statement, Prior inconsistent statement, Judicial discretion, Recent invention, Motive. *Practice, Criminal,* Severance, Trial of defendants together, Judicial discretion, Instructions to jury. *Homicide. Witness,* Immunity.

At a murder trial, the judge acted within his discretion in admitting all of a witness's prior statements to police, for purposes of rebutting an implication of recent fabrication and in the interests of completion. [201-205]

In a murder case, the judge did not abuse his discretion in denying one defendant's motion to sever his trial from that of the codefendant. [205-206]

Evidence at a murder trial was sufficient to warrant the jury to find that the defendant had been a joint participant in the homicide. [206-207]

At a murder trial, the judge correctly instructed the jury on their consideration of the testimony of an immunized witness. [207]

Neither a prosecutor's questioning of a Commonwealth witness nor his remarks in closing argument constituted improper vouching for the witness. [208]

INDICTMENT found and returned in the Superior Court Department on July 21, 1992.

The case was tried before *John A. Tierney,* J.

*Bruce Ferg,* Committee for Public Counsel Services, for the defendant.

*John E. Bradley,* Assistant District Attorney, for the Commonwealth.

KASS, J. Of four claims on appeal by the defendant Eroy Kindell, the closest question pertains to the admissibility of a statement by a prosecution witness that the defense characterizes as a prior consistent statement. We have, of course, considered the other three questions put by the defendant. We affirm the judgment of murder in the second degree.

*Pertinent facts.* In the early hours of November 3, 1991, Chris Bender, the victim, and his cousin Jesse Starks were talking and smoking marijuana in Bender's blue Mercedes Benz automobile parked across from Bender's mother's apartment in the Crescent Court housing project in Brockton. Around 2:17 A.M., Starks heard a shot, then twenty to thirty more. At the conclusion of the fusillade, Bender lay mortally wounded.

Approximately two weeks earlier there had been unfriendly words between Bender and Stephen "Sticks" Fernandes, who was tried with Kindell.[1] Starks saw Fernandes at a liquor store on Crescent Street a week later. Fernandes had pulled up in a gold Thunderbird automobile together with three friends. On that occasion, Fernandes told Starks he was going to "get" him and Bender. The night of the murder there was a party in an apartment on Milton Street in Brockton at which Fernandes and friends of his were present. Fernandes expressed hostility toward Bender and Starks (evidence of this was admitted only against Fernandes). Fernandes and his adherents displayed firearms. Among those adherents was the defendant Kindell, who lifted his shirt to reveal the handle of a gun.

When the party broke up, Fernandes and nine other men headed in two cars for where Bender lived. The whole group — including the defendant Kindell — wore black hooded sweatshirts and, as they entered the Crescent Court project, they all raised their hoods over their heads. Two men, Jordan Rice (who became the principal witness for the government) and Kevin Bynum, stayed with the cars. There were shots and the hooded group came running back to the cars, three of them with guns in their hands.

The next night, all the men who had gone to the project the night before met at Kevin Bynum's apartment. Three men, who were at the apartment but had not been involved the night before, were not allowed in the bedroom where the meeting took place. Kindell was among those in the bedroom, i.e., the inner circle. There was discussion of getting rid of the guns. The meeting participants decided, if asked (as they anticipated they would be), that they would blame the shooting on "[s]ome kids from Boston."

1. *The prior consistent statements.* Among the witnesses for

---

[1]Fernandes appealed separately. Disposition of his appeal is reported in *Commonwealth* v. *Fernandes*, 425 Mass. 357 (1997).

the government was James Clark, who had traveled from Boston to attend the party in Brockton. He testified that he had seen Kindell, whom he knew, at the party, and that Kindell had displayed a gun. On cross-examination, Kindell's counsel brought out that several weeks before the party Kindell and Clark had fought. Kindell's counsel asked Clark: "And is it fair to say at this party you and Eroy [Kindell] weren't on very good terms, were you?" Clark answered: "I was just watching my back, put it that way." The purpose of that cross-examination was to adduce evidence tending to prove Clark had a bias against Kindell and was, therefore, inventing testimony damaging to him. Kindell's counsel then referred to conversations in January, 1992, between Kindell and State police detectives who were investigating Bender's murder. The policemen had come to Clark's house to interview him. They had asked who did the shooting and Clark had said, "Not my boys." Kindell's counsel inquired if Clark had mentioned Kindell's presence at the party. Clark said that he did not remember but, as Kindell's counsel pressed the question, he said: "I might not have told them then. I don't know." Counsel continued, "And when Mason [one of the State police detectives] [called] you a few weeks later, once again, you didn't say anything to him about seeing Eroy [Kindell] at the party, isn't that so?" Clark answered, "Yes."

On redirect examination, the prosecutor asked Clark if he remembered whether during subsequent questioning by State police officers on May 19, 1992, he had "told them about Eroy Kindell at the party." Clark said that he did not remember. Thereupon the prosecutor was permitted to ask whether a written record of that interview refreshed his memory. Clark said the document refreshed his memory a "little bit" and, thus refreshed, said he had told Trooper Mason on May 19 that "I saw him [Kindell] at the party" and "he had a gun." The prosecutor drew from Clark further testimony that, while under oath before a grand jury in July, 1992, he said he had seen Kindell at the party with a gun.

As to prior consistent statements, the basic rule is that they are not admissible. *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26 (1976). *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. 756, 758 (1985). Liacos, Massachusetts Evidence § 6.15 (6th ed. 1994). The reason for the rule is that the testimony of a witness in court should not need — and ought not — to be "pumped up" by evidence that the witness said the same thing on some prior

occasion. 4 Wigmore, Evidence § 1124 (Chadbourn rev. ed. 1972). A prior consistent statement may, however, be admitted to support the testimony of a witness who has been impeached by a suggestion that his testimony is the product of bias or contrivance. *Commonwealth* v. *Sullivan,* 410 Mass. 521, 527 (1991). Liacos, Massachusetts Evidence § 6.15, at 328. An example of this allowable use of a prior consistent statement — pertinent to the case at bar — is rehabilitation of a witness who has been impeached by a prior *in*consistent statement if the suggestion of the inconsistent statement is that the witness's in-court testimony was a recent fabrication or was induced by a bias of the witness against one of the parties. *Commonwealth* v. *Zukoski*, 370 Mass. at 26-27. *Commonwealth* v. *Brookins*, 416 Mass. 97, 102-103 (1993). *Commonwealth* v. *Lareau*, 37 Mass. App. Ct. 679, 683 (1994). Liacos, Massachusetts Evidence § 6.15. The prior consistent statement can rebut the suggestion of the prior inconsistent statement that the in-court testimony was the product of either fabrication or ill will. To qualify for that purpose, the prior consistent statement must have been made before the motive to fabricate or act out of bias arose. *Commonwealth* v. *Haywood*, 377 Mass. 755, 763 (1979). *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. at 758-759. *Commonwealth* v. *Lareau, supra* at 682-683.

It will be recalled that in cross-examining Clark, counsel for Kindell sought to establish that Clark harbored some ill will toward Kindell. If so, Clark's consistent statements were made subsequent to the time the motive to fabricate arose, and the basis for supporting Clark with his prior consistent statement was not present. See *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. at 758-759; *Commonwealth* v. *Lareau*, 37 Mass. App. Ct. at 682-683. The application of these principles, however, is not quite that mechanical. See *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522, 530 (1977), in which we said "the test should remain one of probative value — whether the prior consistent statement has a logical tendency to meet and counter the suggestion that the witness has recently contrived his testimony for purposes of trial. In making that determination, a measure of discretion must be given to the trial judge . . . ." See also *Commonwealth* v. *Martinez*, 425 Mass. 382, 397 (1997); Liacos, Massachusetts Evidence § 6.15, at 331; 4 Wigmore, Evidence § 1126, at 267.

It is less than obvious that the January 15, 1992, conversation

by Clark with the State police, and a follow-up conversation with one of the troopers on January 28, 1992, were inconsistent with his trial testimony. The asserted inconsistency is that Clark did not then implicate Kindell. That is not an express contradiction of what Clark said at trial. A prior statement may be inconsistent, however, if by what it omits to say the facts look different than those suggested by the in-court testimony of the witness. *Foster* v. *Worthing*, 146 Mass. 607, 608 (1888). *Commonwealth* v. *Homer*, 235 Mass. 526, 532 (1920). *Commonwealth* v. *West*, 312 Mass. 438, 440 (1942). *Commonwealth* v. *Lopes*, 34 Mass. App. Ct. 179, 185-186 (1993). In the determination of whether a prior statement is, in fact, inconsistent, "much must be left to the discretion of the presiding judge." *Foster* v. *Worthing, supra.*

Clark did not make the facts look different in his police interview of January 15, 1992 (and the follow-up interview) if, as was apparently the case, he responded to police questioning and did not volunteer answers to questions that had not been put to him. If animus on Clark's part against Kindell disposed him to make trouble for Kindell by implicating him in the killing of Bender, that hostile sentiment would have been stronger in January, 1992, much closer to Clark's fight with Kindell, than on May 19, 1992, July, 1992, and the date of Clark's trial testimony, June 24, 1994.

The judge had reason to see Clark's testimony of January 15, 1992, as facially inconsistent but not necessarily so, depending on what Clark had said to authorities in the face of follow-up interrogation. If so, there was a danger that if only the January 15 or January 28 interrogation were mentioned, the jury would be misled by receiving an incomplete picture. In those circumstances, we think the judge acted within his discretion in allowing, for the purpose of filling in omitted portions of the picture, examination of Clark as to what he told the police on May 19 about Kindell and what he said, under oath, to a grand jury in July. The trial judge "is in a better position than an appellate court to evaluate the subtleties and nuances of the trial and . . . consequently should not be reversed for admitting or excluding such testimony except where it is clearly shown that his ruling is outside the proper boundaries of discretion." *Commonwealth* v. *Darden*, 5 Mass. App. Ct. at 530. Because the pattern here differed from the classic *Binienda* and *Lareau* pattern, the judge acted within his discretion in admitting, for the

purpose of rebutting an implication of recent fabrication or improper motive, testimony that completed what Clark had said to the authorities. See Liacos, Massachusetts Evidence § 6.15, at 331; Proposed Mass.R.Evid. 801(d)(1).[2] Cf. *Commonwealth v. Diaz*, 422 Mass. 269, 274-275 (1996).[3]

2. *Severance.* Kindell was tried with a codefendant, Stephen "Sticks" Fernandes, who figured as the principal aggressor in the shooting scheme. Fernandes was convicted by the jury of murder in the first degree. On appeal, Kindell argues that the trial judge erred in denying his motion to sever his trial from that of Fernandes. The decision to sever defendants is vested in the discretion of the trial judge. *Commonwealth v. Moran*, 387 Mass. 644, 658 (1982). *Commonwealth v. Clarke*, 418 Mass. 207, 217 (1994). *Commonwealth v. Zawatsky*, 41 Mass. App. Ct. 392, 400 (1996). Abuse of discretion occurs when the prejudice to the party asking for severance is so overwhelming that it prevents a fair trial. *Commonwealth v. Weaver*, 400 Mass. 612, 617 (1987).

Neither of the conditions for mandatory severance obtained in this case. First, there were no damaging statements by a codefendant who was not available for cross-examination. See *Bruton v. United States*, 391 U.S. 123, 128 & n.3, 135-136 (1968); *Commonwealth v. Pontes*, 402 Mass. 311, 314 (1988).[4] Second, Fernandes and Kindell had not adopted mutually

---

[2]That rule provides: "A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ."

[3]The Commonwealth has argued that Clark's evidence as to the presence of Kindell at the party, with a gun, was of minor significance because the significant connection of Kindell to the crime was made by another witness, Jordan Rice. Rice gave testimony that he saw Kindell running with the pack when it went into the housing project to kill Bender and when it came out. Rice also placed Kindell at the cover-up meeting. We take Clark's evidence as significant, nonetheless, because it places Kindell at the party where the shooting enterprise appears to have been cooked up and it shows Kindell as equipped to participate. In addition, Rice's testimony carried the impediment of being that of an immunized witness (see *infra* section 4).

[4]There are more parts to the *Bruton* rule than are set forth in the main text. It requires severance if (a) a codefendant's extrajudicial statement is offered in evidence; (b) the statement is not admissible against the defendant; (c) "the codefendant is not subject to cross-examination because he does not testify; and . . . [d] there is a substantial possibility that in determining the defendant's guilt, the jury relied on the codefendant's 'powerfully incriminat-

antagonistic defenses, i.e., the one did not point his finger against the other. *Commonwealth* v. *Clarke*, 418 Mass. at 217. *Commonwealth* v. *Zawatsky*, 41 Mass. App. Ct. at 400. Kindell stresses that certain evidence admitted, with limiting instructions, not as to him but only as to Fernandes, was so toxic that it could not help but contaminate his own defense. The evidence that Kindell refers to was testimony from Rice that Fernandes had given voice to threats against Bender at times when Kindell was not present. Jurors are expected to follow judicial instruction. *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982). *Commonwealth* v. *Lappas*, 39 Mass. App. Ct. 285, 289 (1995). That Kindell would have had a better chance for acquittal had he been tried alone did not compel severance. *Commonwealth* v. *Clarke*, *supra* at 217. The government's case against Kindell was based on the theory that he was a collaborator in the homicidal enterprise. In such circumstances, joinder for trial is indicated. *Commonwealth* v. *Zawatsky*, *supra*. The judge did not abuse his discretion in denying the motion to sever.

3. *Sufficiency of the evidence.* There was evidence entitling the jury under the *Latimore*[5] standard to find that Kindell (a) was at the Milton Street party on November 2, 1992; (b) while at the party displayed a firearm; (c) rode to where Chris Bender lived with the shooting party, traveling along back roads; (d) entered the project with five men who carried firearms; (e) was inside when the shooting occurred; (f) emerged from the project with the shooting party, jumped into one of the getaway cars, and left with the group; and (g) attended the cover-up meeting the next day. That was sufficient for the jury to make an ultimate finding that Kindell had been a joint participant in the murder of Bender in that Kindell was (1) present at the scene of the crime, (2) with knowledge that another intended to commit the crime or with intent to commit a crime, and (3) by agreement was willing and available to help the other if necessary. *Commonwealth* v. *Bianco*, 388 Mass. 358, 366 (1983). *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997). *Commonwealth*

ing extrajudicial statements' notwithstanding any limiting instructions from the judge." *Commonwealth* v. *Pontes*, *supra*.

[5]That is, the jury, viewing the evidence in a light most favorable to the prosecution, could rationally have found those facts beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), *S.C.*, 423 Mass. 129 (1996).

v. *Kilburn*, 426 Mass. 31, 34-35 (1997).[6] See and compare *Commonwealth* v. *Michel*, 367 Mass. 454, 457-459 (1975), *S.C.*, 381 Mass. 447 (1980); *Commonwealth* v. *Casale*, 381 Mass. 167, 168-174 (1980); *Commonwealth* v. *Clarke*, 418 Mass. at 214-215. Contrast *Commonwealth* v. *Perry*, 357 Mass. 149, 150-152 (1970). The government was not required to disprove that Kindell was just "along for the ride." See *Commonwealth* v. *Nadworny*, 396 Mass. 342, 356 (1985), cert. denied, 477 U.S. 904 (1986).

4. *Instructions on immunized witness.* Rice had testified under a grant of immunity. See G. L. c. 233, §§ 20C-20I. As to his testimony the judge charged the jury:

> "The testimony of an immunized witness should[7] be examined with greater care or scrutiny than that of an ordinary witness, a witness who had not been granted immunity from prosecution for his or her testimony. You should consider the testimony of an immunized witness and determine whether it has been affected by his personal interest, personal advantage and any personal antagonism he might have against either defendant.

> "You are free to give such testimony whatever weight you fairly consider it to have in light of all the circumstances. Such testimony is always to be received with caution and weighed with great care by the jury."

The judge also explained the meaning of immunity, why it is sometimes given, and about the requirement of corroboration of the testimony of an immunized witness. G. L. c. 233, § 20I. Kindell requested the judge to instruct the jury that the prosecution has no way of knowing whether Rice was telling the truth. The charge as given was consistent with *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 240-242 (1990). It was not necessary to say again, in a slightly different way, that the jury were to regard the testimony of the immunized witness with special scrutiny.

---

[6]The judge properly instructed the jury that knowledge of the crime, association with the principals, presence at the scene, acquiescence, and failure to prevent the crime are insufficient to sustain a conviction. See *Commonwealth* v. *Clarke*, 418 Mass. at 214; *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 76-77 (1973).

[7]As originally transcribed this read "shouldn't"; the mistake was corrected by acknowledgment of the court reporter and by stipulation of the parties.

5. *Questions by the prosecutor concerning status of the immunized witness.* Neither the prosecutor's questioning of Rice about his obligation to tell the truth nor his comments in closing argument that the grant of immunity did not give Rice a license to lie — a response to a defense argument that he had such a license and had exercised it — constituted improper vouching for a government witness.

*Judgment affirmed.*