## COMMONWEALTH vs. LAMONT BROOKINS.

Suffolk. April 7, 1993. - August 11, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence*, Prior consistent statement, Recent invention, Judicial discretion, Grand jury proceedings. *Probable Cause. Practice, Criminal*, Appeal, New trial.

At a criminal trial, the prosecutor's cross-examination of the defendant, focussing on the defendant's exposure to materials that would inform him about the Commonwealth's probable evidence, strongly implied that the defendant's testimony was tailored to be in accord with the Commonwealth's evidence; consequently, even though the prosecutor did not explicitly argue that the defendant's testimony had been a recent fabrication, the defendant should have been permitted to introduce proffered evidence of an out-of-court statement he made to a court psychiatrist, on the day the alleged crimes occurred, that was in accord with the defendant's trial testimony, and the exclusion of this evidence was error requiring reversal. [101-103]

Evidence of possession of a pistol, combined with criminal activity and flight, established probable cause to indict a defendant for unlawfully carrying a firearm. [103-104]

Appellate review of the denial of a criminal defendant's motion for a new trial, based on ineffectiveness of trial counsel, should proceed on the record of an evidentiary hearing and the judge's findings of fact, or a stipulation of facts, rather than on affidavits alone. [104]

INDICTMENTS found and returned in the Superior Court Department on May 15, 1990.

A motion to dismiss was heard by *Guy Volterra*, J. The cases were tried before *John L. Murphy, Jr.*, J., and a motion for a new trial was considered by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brownlow M. Speer*, Committee for Public Counsel Services (*Bruce R. Bono*, Committee for Public Counsel Services, with him) for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant appealed to the Appeals Court from his convictions of assault by means of a dangerous weapon and unlawfully carrying a firearm. He also appealed from the denial of his motion for a new trial of both indictments. The Appeals Court reversed the convictions and set aside the verdicts after concluding, on the basis of affidavits, that, in support of his motion for a new trial based on a key witness's failure to appear, the defendant had "made an adequate factual showing" that he had been deprived of "effective assistance of counsel and the right to compulsory process in his behalf." 33 Mass. App. Ct. 626, 635-636 (1992). We allowed the Commonwealth's application for further appellate review. Although our focus is on an entirely different issue from the one on which the Appeals Court concentrated, we agree that the defendant is entitled to a new trial of both indictments. Our conclusion is not based on concerns about ineffective assistance of counsel or deprivation of compulsory process, but instead is grounded on what we perceive to have been the erroneous exclusion from evidence at trial of an out-of-court statement by the defendant that was consistent with his trial testimony. The out-of-court statement was offered by defense counsel to counteract testimony elicited from the defendant during cross-examination which defense counsel argued to the trial judge and argues to us implied that the defendant's testimony had been recently contrived or was the product of particular inducement or bias.

We repeat the recitation of relevant evidence that is contained in the Appeals Court's opinion. "1. *The Commonwealth's version of events*. The Commonwealth's case against Brookins hinged upon his identification by Boston police detective Larry Ellison as the man Ellison had fleetingly observed firing a gun at other people and then fleeing. Ellison and fellow officer Elton Grice, both in plainclothes, had just

executed a search warrant, pertaining to unrelated criminal activity, at 6 Wayne Street in Roxbury. As Ellison emerged from the building in front of Grice, he noticed three black men near the corner of Wayne Street and Blue Hill Avenue, at a distance approximately equal to the width of two sidewalks and the avenue. One of the men fired a handgun several times at another group of individuals standing across the street from him near the intersection of Castlegate Road and Blue Hill Avenue.

"The three men then fled, pursued by Ellison and Grice with guns drawn. As the suspects split up, Ellison attempted to follow two of them onto Maple Street, but they eluded him. Ellison then radioed in a description of the shooting and pursuit and requested assistance. Grice, who had not observed the shooting, chased the third man but also lost sight of him near the corner of Maple and Nazing Streets. Proceeding down Maple Street to Seaver Street in response to a police radio broadcast informing him that the suspects might be heading that way, Grice saw and began to chase an individual, who turned out to be Brookins, running down the street toward Blue Hill Avenue. Grice, with gun still drawn, yelled at Brookins to stop and ran after him. Brookins continued running and began frantically attempting to gain entry into passing vehicles on Blue Hill Avenue by banging on car windows and throwing himself against doors in a frenzied fashion, until he was knocked down by a car. Grice seized him and had him taken to the police station, where Ellison identified him as the shooting assailant.

"Although he had observed the three black males at the scene of the shooting for only 'a short time, maybe 10, 15 seconds, if that long' before they fled, Ellison based his identification on the fact that the person who fired the gun had 'turned and looked me right in my face' as he started to run off. Despite further investigation, the police never found or produced any gun, bullets, or other physical evidence tying Brookins to the shooting, never located the other suspects, and produced no other witness placing Brookins at the scene of the shooting or identifying him as the shooter.

"2. *Brookins's version of events.* Brookins took the stand in his own behalf and presented himself as an innocent bystander who got caught up in the confusing and dangerous circumstances of a nearby shooting incident. He testified that he had been sitting on the steps of a church near Wayne Street and Blue Hill Avenue, drinking beer after work. Upon hearing several shots being fired, apparently across the street from the church, he got up and ran through the church school yard out onto Wayne Street. After he had run to Seaver Street, he slowed down and looked behind him. He saw that he was being chased by a man (in streetclothes) with a gun in his hand. As the man with the gun gained in his pursuit, Brookins ran toward Blue Hill Avenue. With the gunman only about thirty feet behind him and running fast, Brookins, panic-stricken and fearing he was about to be shot, attempted to force his way into several passing cars. When one of them struck him, he fell to the ground and was apprehended by Grice, who had been the man chasing him." 33 Mass. App. Ct. 626, 627-628 (1992).

At trial, the prosecutor undertook the following line of inquiry on cross-examination of the defendant. THE PROSECUTOR: "After you got arrested up until today, at any point in time did you become aware of what the specific allegations were against you?" THE WITNESS: "Did I understand the charges?" THE PROSECUTOR: "Not just the charges; did you read any material that might indicate what the Government's testimony would be at trial?" THE WITNESS: "Yes." THE PROSECUTOR: "You had an opportunity to look at the grand jury minutes?" THE WITNESS: "Yes." THE PROSECUTOR: "You had an opportunity to read the police report?" THE WITNESS: "Yes." THE PROSECUTOR: "For that matter, you had an opportunity to peruse the radio communications; is that right?" THE WITNESS: "Yes." THE PROSECUTOR: "So you were aware of everything that was more or less going to be testified against you today; weren't you?" THE WITNESS: "I didn't know the questions that would be asked." THE PROSECUTOR: "My question is, did you anticipate before being brought to trial here today that witnesses were going to

say that you were running pell-mell down Seaver Street trying to break into cars?" THE WITNESS: "Yes." THE PROSECUTOR: "You were aware also, sir, before you testified today, that Boston police officers were going to be testifying that they were going to be running up Wayne Street after somebody; you were aware of that, weren't you?" THE WITNESS: "Yes." THE PROSECUTOR: "You've been aware of that for a while, haven't you?" The judge then instructed the prosecutor to move on to another line of questioning.

Later in the trial, after the defendant's testimony had been completed, defense counsel told the judge at a bench conference that she intended to call Dr. Leon Briggs as a rebuttal witness to testify to a prior out-of-court statement made by the defendant that was consistent with his testimony and would rebut the implication contained in the prosecutor's cross-examination of the defendant that the defendant's testimony had been recently fabricated. The judge said that he would rule on the admissibility of such testimony when Dr. Briggs came to court. Following the brief testimony of another witness, and after obtaining permission for a bench conference, defense counsel told the judge that Dr. Briggs was on his way to the court at that moment, that he was the court psychiatrist at the Roxbury Court Clinic, and that the defendant was referred to him on the day after the alleged crimes occurred. Defense counsel said that "[i]n the interview with Dr. Leon Briggs, Mr. Brookins indicated to Dr. Leon Briggs what had happened the night before. Dr. Briggs is going to testify that he told him, first of all, that he had been drinking; second of all, that he was running away from a man, trying to escape from him; and that he was trying to get into cars in an effort to get away from the man." That statement was consistent with the defendant's testimony. The judge responded that there had been "no charge made of recent fabrication" and that he did not "see how it's admissible — consistent statement." The judge then said that "we're not going to wait for anybody." The defense then rested.

The defendant contends that his testimony on cross-examination strongly suggested that his testimony on direct exami-

nation had been the product of his awareness of what the
Commonwealth's evidence would be as disclosed to him by
the grand jury minutes, the police report, and the radio com-
munications, all of which he had had an opportunity to look
at, read, or peruse before testifying. "The prosecutor's unfair
cross-examination of [the defendant]," the defendant now ar-
gues, "could only have misled the jury into discounting his
credibility on the false assumption that his account had been
tailored to meet the Commonwealth's evidence. The judge's
exclusionary ruling barred [the defendant] from demonstrat-
ing the falsity of the prosecutor's insinuation." The defend-
ant argues that he "was in the position of having given [an]
account of the events to which he testified at trial to an un-
questionably neutral party *before* he had any opportunity" to
fabricate, but he was not allowed to bring that information to
the jury's attention (emphasis in original).

The general rule is that a witness's prior consistent state-
ment is not admissible, even though the witness's prior incon-
sistent statement has already been admitted. The reason for
that rule is that evidence that a witness has given an out-of-
court account of an event or transaction that contradicts his
in-court testimony fairly warrants an inference that the wit-
ness is unreliable, and that inference is not dissipated by the
fact that the witness has also given another out-of-court
statement that is consistent with his testimony. The contra-
diction and suggestion of unreliability remain. *Common-
wealth* v. *Jenkins*, 10 Gray 485, 488 (1858). See *Common-
wealth* v. *Zukoski*, 370 Mass. 23, 26-27 (1976);
*Commonwealth* v. *Retkovitz*, 222 Mass. 245, 250 (1915).
However, when "a witness is sought to be impeached, by
cross-examination or by independent evidence, tending to
show that at the time of giving his evidence he [was] under a
strong bias or in such a situation as to put him under a sort
of moral duress to testify in a particular way . . . it is com-
petent to rebut this ground of impeachment and to support
the credit of the witness[] by showing that, when he was
under no such bias, or when he was free from any influence
or pressure, he made statements similar to those which he

has given at the trial." *Commonwealth* v. *Jenkins*, *supra* at 489. See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 629 (1986); *Commonwealth* v. *Zukoski*, *supra* at 26-27. The rule is based on logic. Of course, to be admissible, the witness's out-of-court statement that is consistent with his testimony must have been made before he became subject to the bias or pressure that is claimed to have influenced his testimony. *Commonwealth* v. *DiLego*, 387 Mass. 394, 399 (1982).

"The trial judge has a range of discretion in determining whether a suggestion of recent contrivance exists in the circumstances." *Commonwealth* v. *Zukoski*, *supra* at 27. *Commonwealth* v. *Andrews*, 403 Mass. 441, 455 (1988). *Commonwealth* v. *Tucker*, 189 Mass. 457, 485 (1905). We think, however, that the judge was not correct in determining here that "no charge [had been] made of recent fabrication." Although the prosecutor did not explicitly argue that the defendant's testimony was contrived, the prosecutor's focus in cross-examination on the defendant's exposure to materials that would inform him about the Commonwealth's probable evidence, including the fact that the defendant was "running pell-mell down Seaver Street trying to break into cars" and that "Boston police officers were going to be testifying that they were going to be running up Wayne Street after somebody," strongly implied that the defendant's testimony was tailored to be in accord with the Commonwealth's evidence as much as possible in order to give the defendant credibility. The psychiatrist's expected testimony that, before the defendant was made aware of the likely testimony of the Commonwealth's witnesses, the defendant told the psychiatrist substantially what he had told the jury, would have significantly diminished the force of the implication that the defendant's testimony on direct examination had been contrived. We are satisfied that a new trial is required.

We turn to two other matters briefly. First, the defendant filed a pretrial motion to dismiss the indictment for unlawfully carrying a firearm. That motion was denied, and on appeal the defendant argues that that ruling was erroneous because the evidence before the grand jury was insufficient to

establish probable cause to arrest the defendant for unlawfully carrying a firearm. The defendant incorrectly relies on *Commonwealth* v. *Couture*, 407 Mass. 178, cert. denied, 498 U.S. 951 (1990), in which we held that the police lacked probable cause to believe that a defendant in possession of a gun, who gave no indication of being involved in criminal activity, was not licensed to carry the gun. Here, unlike in *Couture*, the grand jury heard evidence that the defendant fired a pistol at a group of youths and fled from the police. Evidence of possession of a gun, combined with criminal activity and flight, is enough to warrant a finding of probable cause to arrest for unlawfully carrying a firearm.

The second matter that we shall address briefly is our reason for not deciding, as the Appeals Court did, that the defendant is entitled to a new trial because, at the trial, he was deprived of two constitutional rights, the right to effective assistance of counsel and the right to compulsory process. Before doing so we make the observation that our order granting the Commonwealth's application for further appellate review was not limited to specified issues and, therefore, we appropriately may consider all the issues argued before us. *Commonwealth* v. *Stathopoulos*, 401 Mass. 453, 459 (1988). As we stated at the outset of this opinion, the Appeals Court reversed the trial judge's denial of the motion for a new trial on the basis of affidavits. There had been no evidentiary hearing. In our view, in a case like this, in the absence of a hearing followed by findings of fact, or of a stipulation of facts, it is not possible for an appellate court to know "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer [and] whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The judgments are reversed, the verdicts are set aside, and the case is remanded for a new trial of both indictments.

*So ordered.*