COMMONWEALTH vs. THOMAS P. CARLINO.

Bristol. May 3, 1999. - June 14, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Homicide. Malice. Self-Defense. Defense of Others. Evidence,* Self-defense.
*Practice, Criminal,* Instructions to jury, Argument by prosecutor.

At the trial of an indictment for murder in the first degree, the judge's errone-
ous or misleading instructions on provocation, self-defense, and defense of
another, all of which were raised by the evidence, created a substantial
likelihood of a miscarriage of justice requiring a new trial. [694-696]

Evidence at a murder trial, and inferences drawn therefrom, warranted submis-
sion of the theory of premeditated murder to the jury. [696]

At the retrial of a murder indictment, the judge should exclude from evidence,
if offered by the Commonwealth, certain autopsy photographs that are not
necessary and that pose a risk of prejudice. [696-697]

Where evidence at a murder trial established that the fatal encounter occurred
in a driveway and not in the defendant's home, the defendant was not
entitled to a jury instruction under G. L. c. 278, § 8A. [697]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 23, 1994.

The cases were tried before *John A. Tierney,* J.

*Alan Jay Black* for the defendant.

*Catherine B. Sullivan Ledwidge,* Assistant District Attorney,
for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the
defendant of murder in the first degree (on theories of deliberate
premeditation and extreme atrocity or cruelty), and of the unlaw-
ful possession of a sawed-off shotgun. He is represented by new
counsel on appeal. We conclude that portions of the jury instruc-
tions, concerning provocation, self-defense, and defense of
another, were either erroneous or misleading and posed a
substantial likelihood of a miscarriage of justice. Accordingly,
we reverse the defendant's conviction of murder in the first
degree and remand that indictment for a new trial.

There was no dispute that the defendant killed George Es-

trella. The evidence considered in the light most favorable to the defendant, see *Commonwealth* v. *Johnson,* 412 Mass. 368, 369 (1992), disclosed the following. Sometime during the evening of May 31, 1994, Estrella, a homeless man, came into the defendant's backyard and asked for a place to stay. The defendant told Estrella that he could stay in a tent on the property. The defendant learned that Estrella was hungry and went inside his trailer to help his foster son, Robert Smith, bring out some hot dogs. When the defendant went back outside, he saw Estrella underneath his truck with a lit cigarette lighter. The defendant became angry with Estrella, told him to get off his property, and told Smith to go inside and call the police. Estrella became hostile and refused to leave. A confrontation ensued, after which Estrella left, stating that he was going to come back and "take care of both of you."

After Estrella's departure, the defendant noticed that the door to his truck was ajar, and proceeded to inspect the vehicle for damage. He found that the glove compartment was open, that his belongings were in disarray, and that a knife he kept on the seat of the truck was gone. He found the empty sheath on the ground outside the truck.

Later that night, Smith woke the defendant and told him Estrella had returned, accompanied by another man, and was outside banging against the trailer, yelling, swearing and threatening Smith. Estrella shouted, "You motherfuckers are all done." Smith looked outside and saw Estrella with a baseball bat in one hand and something else, which he later realized was a knife, in the other. When Smith went outside, Estrella charged him and started "whacking" him with the baseball bat. Estrella pinned Smith to the ground, grabbed him by the throat, pointed the blade of the knife toward his chest, and yelled, "I'm going to kill you, boy."

The defendant, who was intoxicated, came outside with his shotgun. The second man, hiding in nearby evergreens, fired a shot at the defendant as he came out of the house, and then ran away. The defendant, uninjured, then saw that Smith and Estrella were wrestling on the ground and that Estrella had the defendant's knife in his hand. The defendant told Estrella, "Let him go, let him up, let him up." The defendant aimed his shotgun at Estrella's leg and fired, intending to disable him. The defendant then attempted to disarm Estrella. Estrella lashed out at the defendant with the knife, and Estrella and the defendant

began rolling around on the ground. The defendant gained control of the knife and stabbed Estrella multiple times. The defendant testified that he did not "remember stabbing [Estrella]," but did remember "having the knife in my hand." Smith testified that, when he pulled the defendant off Estrella, the defendant swung at him with the knife, causing Smith to jump back and say, "Dad, it's me. It's Bobby, it's me, it's me. No more."

1. The evidence required the judge to instruct the jury on the question whether the defendant may have acted with provocation. "The judge should have told the jury in some form 'that, if the Commonwealth had not proved the absence of provocation beyond a reasonable doubt, there could be no finding of malice and hence no conviction of murder.' *Commonwealth* v. *Boucher*, 403 Mass. 659, 661 (1989). Malice and adequate provocation are mutually exclusive. *Id.* at 661-662. See *Ariel A.* v. *Commonwealth*, 420 Mass. 281, 285 (1995)." *Commonwealth* v. *Acevedo*, 427 Mass. 714, 715-716 (1998). The evidence also required the judge to instruct carefully on self-defense and defense of another. The jury should have been told that self-defense and defense of another, if warranted by the circumstances and carried out properly, constitute a complete defense and not merely a mitigating circumstance. See *Commonwealth* v. *Mejia*, 407 Mass. 493, 496 (1990) (self-defense). See also *Commonwealth* v. *Johnson, supra* at 370-373 (defense of another). The jury should also have been told that, if the defendant used excessive force in an otherwise appropriate exercise of self-defense or defense of another, and that, if death resulted from the use of excessive force, he should be found guilty of manslaughter. *Commonwealth* v. *Torres*, 420 Mass. 479, 491-492 (1995).

The instructions given the jury contained the following infirmities:

(a) On the issue of provocation, the judge gave, virtually word for word, the instruction which we concluded was erroneous in *Commonwealth* v. *Acevedo, supra* at 716-717, because it misplaced the burden of proof. There we observed that the difference between a correct instruction on provocation, and the incorrect one given here, is "substantial." *Id.* at 717. We stated that the erroneous instruction, even if it followed instructions which correctly stated the burden of proof, "could only have misled" the jury. *Id.* We also indicated in *Acevedo*, a case of

murder in the second degree, where there was, as there is here, a legitimate issue as to provocation, that "we [had] doubt that the error posed no substantial risk of a miscarriage of justice."[1] *Id.* See *Commonwealth* v. *Roderick, ante* 271, 278 (1999) (no legitimate issue of provocation, but, had there been, erroneous instruction would have required reversal of convictions). There was no objection made by the defendant's trial counsel, but we conclude that the error, when weighed with the other deficiencies in the instructions on the disputed issues of self-defense and defense of another that we next discuss, posed a substantial likelihood of a miscarriage of justice.

(b) The judge interrupted his instructions on the issue of provocation to instruct briefly on self-defense and the use of excessive force in self-defense. He then went on to instruct on involuntary manslaughter and several other matters. The judge then returned to the issue of self-defense, and the last eight pages of the transcript of his jury instructions dealt primarily with that subject. These instructions, the last statements of law the jury heard on a critical aspect of the case, failed to (i) explain adequately the law with respect to the defense of another (that issue was dealt with in two sentences); (ii) state adequately the Commonwealth's burden of proof with respect to defense of another; (iii) explain with precision that a defendant's proper defense of another would constitute a complete defense; and (iv) indicate clearly that the use of excessive force in self-defense or in the defense of another required a manslaughter verdict. As a result of what was said, and what should have been said, but was omitted, the jury could have been left with the erroneous impression that, if excessive force was used by the defendant in his own defense or that of Smith, the killing would be murder and not manslaughter. See *Commonwealth* v. *Torres, supra* at 491-492; *Commonwealth* v. *Johnson, supra* at 373. The defendant's trial counsel did not object to these portions of the instructions. As has been indicated, when these deficiencies are added to the error discussed above with respect

---

[1]*Commonwealth* v. *Acevedo,* 427 Mass. 714 (1998), was decided after the trial in this case. However, the holding there was stated in substantially similar terms in *Commonwealth* v. *Boucher,* 403 Mass. 659, 663 (1989), where we said: "[T]he judge's omission [not making clear to the jury that if the Commonwealth had not proved the absence of provocation beyond a reasonable doubt, there could be no malice and hence no conviction of murder] created the significant possibility that the defendant was erroneously convicted of murder in the first degree."

to the provocation instruction, we are left with the sense that a substantial likelihood of a miscarriage of justice may have occurred. See *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998). The defendant is entitled to a new trial.

2. We now discuss briefly issues that may arise at retrial.

(a) The evidence in the Commonwealth's case-in-chief, together with the reasonable inferences that could be drawn therefrom, warranted submission of the theory of premeditated murder to the jury. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Contrary to the defendant's contention, the Commonwealth's evidence as to the disabling injury caused to the victim by the shotgun blast, the nature of the stabbing including the infliction of multiple fatal wounds, the defendant's conduct before and during the killing, and his actions thereafter which were indicative of consciousness of guilt, warranted a finding by the jury beyond a reasonable doubt that the defendant had acted after the reflection necessary to establish premeditation.

(b) The judge should exclude from evidence, if offered by the Commonwealth, any autopsy photographs of the victim's internal organs, including photographs of his heart and liver.[2] These photographs are not necessary and pose a risk of prejudice. The Commonwealth may offer other photographs (the admission of which will be subject to the judge's discretion) of

[2] A trial judge has discretion to admit photographs of the victim's internal organs if they are relevant to whether murder was committed with extreme atrocity or cruelty, which is at issue in this case. See *Commonwealth* v. *Gallagher*, 408 Mass. 510, 519 (1990). However, such photographs should be admitted only "if they are important to the resolution of any contested fact in the case." *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980). While we do not exclude evidence just because it is gruesome or inflammatory, such evidence should not be admitted gratuitously. The probative value must outweigh its distasteful nature. See *Commonwealth* v. *DeSouza*, 428 Mass. 667, 670 (1999).

Here, there is sufficient other evidence to show the extent of the injuries to the victim's body. There were admitted in evidence many autopsy photographs of the exterior of the body, showing all the knife wounds as well as the wounds to the hand and leg from the shotgun. There was a chalk depicting the location of the wounds, and extensive expert medical testimony as to the nature, extent, and severity of the wounds. The expert testified as to the depth of the wounds, described the extreme pain suffered by the victim, as well as his debilitated state from the shooting before the defendant began stabbing him, and expressed the opinion that thirteen of the fifteen stab wounds were fatal.

the wounds inflicted on the victim to support its theory that the killing was committed with extreme atrocity or cruelty.

(c) We do not view the criticized portions of the prosecutor's closing argument as excessive. Undoubtedly, the closing arguments at the retrial will be different. It will be up to the defendant's trial counsel to make timely and specific objections, if he or she considers the prosecutor's summation to contain improper or unfair remarks.

(d) The defendant is not entitled to a jury instruction under G. L. c. 278, § 8A, the so-called "castle" law, which relieves a defendant from the duty to retreat when attacked in his or her own home. The fatal encounter did not occur in the defendant's home, but rather in the driveway. See *Commonwealth* v. *Bennett*, 41 Mass. App. Ct. 920, 921 (1996) ("The locus of the confrontation — the defendant's driveway — has none of the closed and secure qualities of an occupied dwelling, and no reasonable basis appears for concluding that a dwelling, for purposes of G. L. c. 278, § 8A, should be interpreted to include a driveway such as the defendant's even though the defendant may have had, in a real property sense, exclusive control over it").

(e) With respect to the malice requirement for murder in the first degree by means of deliberate premeditation, the judge should instruct only that malice is proved if the Commonwealth establishes beyond a reasonable doubt that the defendant acted with an intent to cause the victim's death. See *Commonwealth* v. *Jenks*, 426 Mass. 582, 585 (1998); *Commonwealth* v. *Diaz*, 426 Mass. 548, 553 (1998); *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995). With respect to the malice requirement for murder in the first degree with extreme atrocity or cruelty, the judge should instruct in accordance with *Commonwealth* v. *Vizcarrando*, 427 Mass. 392, 394-395 & n.3 (1998). The instructions on provocation, self-defense, and defense of another should conform to the decisions referred to in this opinion.

3. The judgment on indictment no. 34626 is reversed, the jury's verdict of murder in the first degree is set aside, and the case is remanded for a new trial on the murder indictment. The judgment on indictment no. 34627 is affirmed.

*So ordered.*