COMMONWEALTH *vs.* FRANKLIN McLAUGHLIN.

Suffolk. December 4, 2000. - March 22, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, & SOSMAN, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Presumptions and burden of proof. *Self-Defense. Evidence,* Declaration against interest, Spontaneous utterance, Prior consistent statement, Recent invention.

At the trial of a murder indictment, the judge's instructions to the jury on provocation [560-563] and the use of excessive force in self-defense [563-564] were erroneous: a substantial risk of a miscarriage of justice was created and a new trial was required.

A criminal defendant's self-serving statement to police officers was not admissible at his trial, where it was neither a declaration against penal interest nor a spontaneous utterance; further, the statement was not admissible to rehabilitate the defendant or to "correct distortions" created by Commonwealth witnesses; finally, the statement was not a prior consistent statement admissible to rebut a claim of recent contrivance. [564-567]

INDICTMENT found and returned in the Superior Court Department on March 1, 1995.

The case was tried before *Robert W. Banks,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Linda M. Poulos,* Assistant District Attorney (*John P. Puleo,* Assistant District Attorney, with her) for the Commonwealth.

IRELAND, J. The defendant, Franklin McLaughlin, appealed from his conviction of murder in the second degree. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the conviction. *Commonwealth* v. *McLaughlin,* 48 Mass. App. Ct. 1116 (2000). We granted the defendant's application for further appellate review. The defendant claims that the judge erred in (1) his instructions to the jury on manslaughter; and (2) his exclusion of the

defendant's statement to the police. While we find that the judge properly excluded the defendant's statement to police on hearsay grounds, his instructions to the jury on manslaughter were erroneous, and created a substantial risk of a miscarriage of justice. Thus, the defendant is entitled to a new trial.

1. *Background.* The jury were warranted in finding the following facts. The defendant testified that in the early morning hours of February 15, 1995, he encountered the victim, who informed him, "I got some bumps," which the defendant understood to mean crack cocaine. The victim took some crack cocaine out of his mouth, showed it to the defendant, and sold him a "bump" for eight dollars.

After they parted company, the defendant bit into the "bump," determined that "it wasn't that good," and told the victim that he did not want it. He then "jogged" over to where the victim stood and demanded his money back. When the victim refused, the defendant responded, "I'm going to get my money." At this point, the victim "pivot[ed] a little bit, and . . . when he came back, he was swinging a knife at [the defendant]." As the victim swung at the defendant, the defendant grabbed the victim's right arm, the victim grabbed the defendant, and the two fell to the ground, struggling and rolling over each other.

As the two men fought, the Commonwealth's primary witness, Mark Holguin, watched the struggle from his third-floor apartment. Holguin testified that he heard someone screaming, "Help, call the police, he's trying to kill me," went out onto his deck, and saw two men fighting by a parked car. Holguin heard the victim repeatedly call out, "Help, call the police, I've been stabbed." Consequently, Holguin dialed 911 to report the fight and, while on the telephone, saw the defendant holding the victim by the neck, pushing him onto the hood of a parked car, and punching him in the abdomen.

Holguin then saw a beige car pull up behind the defendant. The occupants asked what was going on and the victim responded by asking for help. He told them that the defendant was trying to rob him and that he had been stabbed. Holguin also testified that the defendant approached the passenger side of the car and spoke to the occupants, although Holguin could

not hear what was said. As the defendant walked away, Holguin heard one of the passengers say, "Why don't you go ahead and finish him off?," to which the defendant responded, "Don't worry, I will," and the car sped off.[1] The defendant then pushed the victim up against the parked car and hit, choked, and punched him, as the victim called for help. Eventually, the defendant walked away. According to the defendant's testimony, when he noticed a police car heading toward him, he ran away to avoid having the police discover that he "had a default for trespassing" and "was just up the street fighting with a guy about drugs." As he fled the scene, the defendant injured his legs and hands climbing over a fence. The defendant was eventually apprehended, taken to the police station and booked, and later taken to a hospital for treatment of his injuries.

2. *Jury instructions.* The evidence required the judge to instruct the jury on the issues of provocation, see *Commonwealth* v. *Carlino*, 429 Mass. 692, 694 (1999); *Commonwealth* v. *Acevedo*, 427 Mass. 714, 715 (1998), and self-defense, see *Commonwealth* v. *Little*, 431 Mass. 782, 787 (2000). The defendant argues that the judge erred several times in the course of instructing the jury on voluntary manslaughter and the factors that reduce murder to manslaughter. He contends that these instructions give rise to a substantial risk of a miscarriage of justice, and thus, warrant reversal. We agree. In reaching this conclusion, we are mindful that "constitutionally erroneous jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole, so that a reviewing court can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth* v. *Repoza*, 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987), citing *Francis* v. *Franklin*, 471 U.S. 307, 315 (1985).

a. *Instructions on provocation.* The defendant argues that the judge erred twice in explaining the Commonwealth's burden of proof on the issue of provocation. The Commonwealth apparently concedes that the provocation instructions were in error, but contends that they do not warrant reversal. We disagree.

---

[1] The defendant's testimony differed from Holguin's. The defendant maintained that the occupants of the car laughed and said, "Go ahead and kill each other," to which the defendant did not respond.

With respect to provocation, the judge gave an instruction and a supplemental instruction, both of which mirror "virtually word for word" the instruction that we found to be erroneous in *Commonwealth* v. *Acevedo, supra* at 716-717, because it "misplaced the burden of proof."[2] *Commonwealth* v. *Little, supra* at 787-788 (where provocation at issue, judge's erroneous instructions on burden of proof on provocation gave rise to substantial likelihood of miscarriage of justice). *Commonwealth* v. *Carlino, supra* at 694-695. "That language incorrectly told the jury that malice is negated by provocation only if provocation is proved beyond a reasonable doubt. The correct rule is that, where the evidence raises the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Commonwealth* v. *Acevedo, supra* at 716. There we noted that the difference between a correct instruction on provocation and the incorrect one is "substantial." *Id.* See *Commonwealth* v. *Little, supra* at 788; *Commonwealth* v. *Carlino, supra* at 694. Moreover, we held that the erroneous instruction, even if it followed instructions that correctly stated the burden of proof, "could only have misled" the jury. *Commonwealth* v. *Little, supra,* quoting *Commonwealth* v. *Acevedo, supra. Commonwealth* v. *Carlino, supra* at 694. Furthermore, in the *Acevedo* case, also involving murder in the second degree and a legitimate issue as

[2]After explaining that a killing committed in the heat of passion occasioned by adequate and reasonable provocation constitutes manslaughter as opposed to murder, the judge incorrectly informed the jury that, "[i]n order to prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove . . . beyond a reasonable doubt . . . that the defendant injured the alleged victim as a result of sudden combat or in the heat of passion or using excessive force in self-defense." Shortly thereafter, the judge correctly stated the rule: "Where there is evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion." After hearing the main charge, the jury requested a simplification of the instructions in "plain English." The judge responded with a supplemental instruction in which he erroneously reinstructed that "it must be proved . . . that the defendant injured the alleged victim as a result of sudden combat or in the heat of passion or using excessive force in self-defense." Later in this supplemental instruction, the judge correctly stated that "the Commonwealth has the burden of proving that defendant did not act in the reasonable use of self-defense or that he acted excessively in the use of self-defense."

to provocation, we announced that "we [had] doubt that the error posed no substantial risk of a miscarriage of justice." *Commonwealth* v. *Acevedo, supra.* See *Commonwealth* v. *Carlino, supra* at 695 (reversal of conviction of murder in the first degree warranted because isolated erroneous provocation instruction, in conjunction with several deficiencies in self-defense instructions, posed substantial likelihood of miscarriage of justice).

The Commonwealth's reliance on *Commonwealth* v. *Niemic,* 427 Mass. 718 (1998), and *Commonwealth* v. *Torres,* 420 Mass. 479 (1995), both of which found that similarly erroneous provocation instructions did not create a substantial likelihood of a miscarriage of justice, is misplaced. In *Commonwealth* v. *Niemic, supra* at 721-722, provocation was not a "live" issue. Here, however, the defendant testified that the victim swung a knife at him after he demanded a refund. Furthermore, because the Commonwealth never conceded that the victim initiated the confrontation, "[t]he question whether the defendant acted with provocation was [a live issue] plainly presented by the evidence." *Commonwealth* v. *Acevedo, supra* at 715. Moreover, "unlike the judge's instructions in *Niemic* and *Torres,* where one incorrect instruction concerning the burden of proof on provocation was sandwiched between instructions that otherwise properly stated the Commonwealth's obligation, here the one correct instruction on the Commonwealth's burden of proof on provocation in the judge's instructions to the jury . . . was sandwiched between two incorrect instructions." *Commonwealth* v. *Grant,* 49 Mass. App. Ct. 169, 173 (2000). "Here the center of gravity of the provocation instructions was strongly on the side of misstatement." *Commonwealth* v. *Acevedo, supra* at 717.[3] For these reasons, the *Acevedo* and *Carlino* decisions, not the *Niemic* and *Torres* decisions, govern.

Although the defendant made no objection at trial, we

---

[3]The sequence of erroneous provocation instructions in this case is quite similar to *Commonwealth* v. *Acevedo,* 427 Mass. 714 (1998). There the pattern was, in the main charge, the judge gave an incorrect instruction, followed by a correct instruction, and then another incorrect instruction, followed by an incorrect instruction in the supplemental charge. *Id.* at 716-717. Here, the pattern is an incorrect instruction, followed by a correct instruction in the main charge, followed by an incorrect instruction in the supplemental charge.

conclude that "the error, when weighed with the other deficiencies in the instructions on the disputed issue[] of self-defense," discussed below, creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Carlino, supra* at 695. See *Commonwealth* v. *Roderick,* 429 Mass. 271, 278 (1999) ("if a provocation instruction had been required . . . the confusion that the instruction likely created in the minds of the jurors would have required reversal").[4]

b. *Instructions on excessive force in self-defense.* The defendant argues the judge made two additional errors in his instructions on excessive force in self-defense. First, the judge instructed the jury: "The Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the excessive use of self-defense before you would be warranted in returning a verdict of manslaughter on this offense." This instruction is "the exact inverse of what it should have been." *Commonwealth* v. *Wood,* 380 Mass. 545, 548 (1980), quoting *Dunn* v. *Perrin,* 570 F.2d 21, 24 (1st Cir.), cert. denied, 437 U.S. 910 (1978).

Second, after explaining that use of excessive force in self-defense is a mitigating factor that could "reduce murder to manslaughter," the judge incorrectly instructed that, "if a person exercises their lawful right to self-defense and the circumstances dictate that they may use reasonable force to defend themselves, and if they act excessively in that use of self-defense and kill, then that *might* be manslaughter" (emphasis added). The judge improperly used the permissive word "might" where he should have used the mandatory word "shall." As self-defense was an issue in this case, and since we have no indication as to the rationale or process behind the jury's decision, it would be inappropriate to speculate that they were not influenced by this flawed instruction. Contrast *Commonwealth* v. *Torres, supra* at 492-493 (defendant not entitled to self-defense instruction, and

---

[4]As the defendant points out, this error may have been compounded further by the fact that the judge failed to instruct the jury that they could not return a verdict of murder unless the Commonwealth had disproved the mitigating factors beyond a reasonable doubt. See *Commonwealth* v. *Boucher,* 403 Mass. 659, 661-663 (1989) (reversal required where judge failed to instruct that, if Commonwealth had not proved absence of provocation beyond a reasonable doubt, there could be no finding of malice and, thus, no conviction of murder).

jury's questions made clear that they rejected defendant's claim of self-defense).

Although the defendant did not object to these errors at trial either, these deficiencies, in conjunction with the erroneous provocation instructions, leave us with the sense that a substantial risk of a miscarriage of justice may have occurred. Cf. *Commonwealth* v. *Carlino, supra* at 695-696. Taken together, the erroneous instructions deprived the defendant of the possibility of being found guilty of manslaughter on the theory of provocation or excessive force in self-defense.[5] "[T]hese instructions, read as a whole, preclude serious consideration by the jury of the propriety of returning a verdict of manslaughter. Of course, 'a clear miscarriage of justice has occurred if [the defendant] was guilty of manslaughter but is now serving the penalty for murder.' " *Commonwealth* v. *Richards*, 384 Mass. 396, 405 (1981), quoting *United States* v. *Frady*, 636 F.2d 506, 512 (D.C. Cir. 1980), rev'd, 456 U.S. 152 (1982). Accordingly, the defendant is entitled to a new trial.

3. *Exclusion of the defendant's statement to police.* Because the issue may arise again on retrial, we turn to the defendant's contention that he should be allowed to introduce his own statement to the police that explained his version of the altercation.[6] He insists that the statement should have been admitted either as a hearsay exception or as nonhearsay. We disagree, and hold that, at the new trial, the defendant may not introduce his own statement.

---

[5]Although in his final supplemental instruction on manslaughter, the judge correctly stated the burden of proof with respect to self-defense, we cannot say that this sufficiently cured the previous erroneous instructions on provocation in the main charge, particularly where this instruction touched on neither heat of passion on reasonable provocation nor sudden combat. See *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 172 (2000). Moreover, "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity [because] [a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Commonwealth* v. *Sires*, 405 Mass. 598, 600 (1989), quoting *Francis* v. *Franklin*, 471 U.S. 307, 322 (1985).

[6]The defendant gave the following statement to Sergeant Trent Holland after he was arrested: "I was being robbed. I bought a bag of crack from him. It was fake. I approached him about it. He went off and we started to tussle. He had the knife." On the first day of trial, the judge granted the Commonwealth's motion in limine to exclude the statement.

a. *Declaration against penal interest.* The defendant initially claims that his statement to the police should have been admitted as a statement against penal interest. This argument fails, if for no other reason, because the defendant is a party to this litigation. P.J. Liacos, Massachusetts Evidence § 8.10 (7th ed. 1999) ("Declarations against interest are statements made by witnesses, not parties to the litigation or their privies or representatives").

b. *Spontaneous utterance.* The defendant alternatively claims that the statement should have been admitted as a spontaneous utterance. Under this exception to the hearsay rule, "a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth v. Crawford,* 417 Mass. 358, 362 (1994), *S.C.,* 430 Mass. 683 (2000), quoting *Blake v. Springfield St. Ry.,* 6 Mass. App. Ct. 553, 556 (1978), *S.C.,* 9 Mass. App. Ct. 912 (1980). See *Commonwealth v. Nunes,* 430 Mass. 1, 3 (1999).

Here, the defendant's statement to the police does not qualify as a spontaneous utterance "made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark . . . thus [having] sufficient indicia of reliability." *Commonwealth v. Zagranski,* 408 Mass. 278, 285 (1990). Although the defendant made the statement shortly after the altercation with the victim, he nonetheless had enough time, as well as a strong motive, to fabricate the story.[7] *Commonwealth v. Gilbert,* 423 Mass. 863, 871 (1996) (defendant's statement "properly excluded . . . because [it] was lacking the spontaneity that would have negated possible fabrication"). Thus, the judge did not abuse his broad discretion in excluding the statement. *Commonwealth v. Crawford, supra* at 362.

c. *Nonhearsay.* The defendant next claims that the statement was admissible as nonhearsay to "correct . . . distortions" created by the testimony of the Commonwealth's witnesses, Nurse Elsie Tomlinson and Sergeant Trent Holland, and to rebut any

---

[7]This case is a good example of the fact that proximity to the event is not the only factor. The statement was made in close proximity to the time of the incident, but the defendant still had sufficient time and a strong motive to fabricate.

implication that the defendant had recently fabricated his testimony. We disagree.

First, the cases on which the defendant relies to argue that the statement is admissible to "correct . . . distortions" created by the Commonwealth's witnesses are inapposite. In those cases, such statements were admitted as nonhearsay to rehabilitate an impeached witness. *Commonwealth* v. *Richardson*, 423 Mass. 180, 187 (1996) (where victim impeached as to her failure to report rape, hearsay statement admissible for nonhearsay purpose of rehabilitation). *Commonwealth* v. *Errington*, 390 Mass. 875, 881 (1984) (where victim impeached on cross-examination, hearsay statement admissible for nonhearsay rehabilitation purposes). Here, the defendant was not impeached by the Commonwealth's witnesses.[8] Thus, it was unnecessary to rehabilitate the defendant by admitting his statement to "correct any mistaken conclusions the jury may have drawn." *Commonwealth* v. *Errington*, *supra*, quoting *Commonwealth* v. *Jackson*, 384 Mass. 572, 584 (1981).

Second, the statement does not qualify as a prior consistent statement admissible for the purpose of rebutting a claim that a witness's in-court statement is a recent contrivance. See *Commonwealth* v. *Martinez*, 425 Mass. 382, 396 (1997), and cases cited; *Commonwealth* v. *Andrews*, 403 Mass. 441, 455 (1988). From the record, it does not appear that the prosecutor suggested, through either cross-examination or independent evidence, that the defendant's testimony was recently contrived.

---

[8]The defendant contends that Tomlinson's testimony, in which she recounted her discussion with the defendant concerning the injuries he sustained climbing over a fence, created the inference that he was denying his involvement in the crime, and that the introduction of his statement would rebut such an inference. This argument is unpersuasive. Tomlinson's testimony constituted a representation of the events leading up to the defendant's injuries, and in fact corroborated in substantial part the defendant's version. Likewise, Holland's testimony that no drugs were found at the scene also did not create any "incorrect inference" that the incident was not a "drug deal gone bad," but rather an unprovoked attack. Finally, because the defendant was not impeached on cross-examination, see *Commonwealth* v. *Richardson*, 423 Mass. 180, 187 (1996); *Commonwealth* v. *Errington*, 390 Mass. 875, 880 (1984), he was not entitled to have his statement admitted to "explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Errington*, *supra*, quoting *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982).

Contrast *Commonwealth* v. *Brookins,* 416 Mass. 97, 103 (1993) (prosecutor's cross-examination strongly implied defendant's testimony was tailored to adhere to Commonwealth's evidence to give defendant credibility). Sergeant Holland's testimony as to the absence of drugs at the crime scene constituted a version of events contradictory to the defendant's, not, as the defendant maintains, an implicit allegation that the defendant's testimony was a recent contrivance. *Id.,* quoting *Commonwealth* v. *Zukoski,* 370 Mass. 23, 27 (1976) ("trial judge has a range of discretion in determining whether a suggestion of recent contrivance exists in the circumstances").

Moreover, even if there had been implicit allegations of recent fabrication inherent in such testimony, the statement is nonetheless inadmissible because it was made after the defendant "became subject to the bias or pressure that is claimed to have influenced his testimony." *Commonwealth* v. *Brookins, supra* (where defendant impeached with prior inconsistent statement, prior consistent statement made before motive to falsify arose improperly excluded). Indeed, at the time he gave his statement, his interest in exonerating himself of a more serious crime was served by depicting the incident as a "drug deal gone bad," as opposed to a murder. Given the evidence, the judge could have reasonably concluded that the defendant sought to offer the statement to bolster his credibility rather than rebut a claim of recent fabrication. *Id.*

For these reasons, the statement was properly excluded, and should not be admitted at the defendant's retrial.[9]

4. *Conclusion.* The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*

---

[9]The defendant's alternative claim that the exclusion of his statement violated his constitutional right to present a defense is without merit.