COMMONWEALTH vs. JAMAL EDWARDS.

No. 05-P-1319.

Hampden. February 6, 2008. - May 15, 2008.

Present: KANTROWITZ, SMITH, & GRAHAM, JJ.

*Firearms. Controlled Substances. Practice, Criminal,* Motion to suppress, Waiver. *Waiver. Probable Cause. Constitutional Law,* Investigatory stop.

Police officers investigating a report of shots fired at an apartment building had probable cause to arrest the defendant without a warrant eighteen hours after the shooting, where the defendant not only was in possession of a firearm at the time of the arrest, but also had been implicated in its shooting, and where this criminal activity, combined with the defendant's flight from the scene of the earlier shooting, gave the officers reason to believe that the defendant had no license to carry the firearm [719-720]; moreover, even if the police did not have probable cause to arrest, they had adequate grounds to conduct an investigatory stop on the ground that the defendant had been involved in a completed misdemeanor (discharging a firearms within 500 feet of a dwelling) that involved a threat to public safety [720-721].

INDICTMENTS found and returned in the Superior Court Department on October 3, 2002.

A pretrial motion to suppress evidence was heard by *Judd J. Carhart,* J.; the cases were tried before him; and a motion for a new trial, filed on June 8, 2006, was also heard by him.

*Thomas N. Turner* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. The defendant was convicted of various fire-arm and drug charges,[1] some involving sentencing enhance-

---

[1]The indictments alleged unlawful possession of a firearm without a firearm identification card, in violation of G. L. c. 269, § 10(*h*) (count one), after having previously been convicted of any combination of three violent crimes or serious drug offenses in violation of G. L. c. 269, § 10G(*c*) (count two); unlawful possession of a firearm without a license, in violation of G. L.

ments.[2] On appeal, the defendant's primary claim is that the police lacked the authority to stop him, as he had, at most, committed only a completed misdemeanor and, therefore, the police needed to secure a warrant for his arrest prior to stopping his motor vehicle.[3] We affirm.

*Facts.* On the night of August 2, 2002, Officer Kakley of the Springfield police department and his partner received a call for shots fired at 106 Lincoln Street, which was described as the location of a multi-unit apartment building in a high crime area of Springfield. When they arrived at the location, they interviewed individuals who stated that a light-skinned black male with glasses had fired a handgun into the air. A person, who wished to remain anonymous, told another officer that the man who fired the shots was named Jamal, that he lived at 192 Pearl Street, and that he was dating a Hispanic woman who lived at 106 Lincoln Street. Witnesses at the scene also reported that the shooter fled in a gold Toyota Camry automobile with shiny rims on the wheels. Officer Kakley and his partner drove by 192 Pearl Street on their way back to the police station and observed a gold Toyota Camry with shiny rims in the parking lot. They ran the plate number on the computer in their cruiser and learned that the car was registered to Jamal Edwards of 192 Pearl Street.

c. 269, § 10(*a*) (count three), after being previously convicted of any combination of three violent crimes or serious drug offenses, in violation of G. L. c. 269, § 10G(*c*) (count four); unlawful possession of a firearm without a license, in violation of G. L. c. 269, § 10(*a*) (count five), as a subsequent offender, in violation of G. L. c. 269, § 10(*d*) (count six); possession of a class B substance as a subsequent offender, in violation of G. L. c. 94C, § 34 (count seven); possession of a class D substance as a subsequent offender, in violation of G. L. c. 94C, § 34 (count eight); and possession of a firearm in the commission of a felony, in violation of G. L. c. 265, § 18B (count nine). Count nine was dismissed by agreement prior to trial. On November 7, 2003, the jury returned guilty verdicts as to counts one, three, five, seven, and eight. Counts three and five involved the same firearm, and served as the predicate offense for sentencing enhancements under counts four and six. See note 7, *infra.*

[2]This aspect of the case — counts two, four, and six — was tried before a different jury on January 29, 2004.

[3]The defendant also claims that (1) the police lacked reasonable suspicion to stop him; and (2) since no verdict slip for count three (unlawful possession of a firearm without a license) was submitted to the jury, he was never properly convicted of that count. The defendant's direct appeal was consolidated with his appeal from the denial of the motion for new trial.

Upon arriving back at the police station, Officer Kakley pulled Edwards's record, viewed a photograph of him, and turned over the results of his investigation to the detective department.

On the following evening, August 3, 2002, while on patrol, Officer Kakley and his partner, Officer Asher, observed the same Toyota Camry they had seen at 192 Pearl Street the night before, driving in the vicinity of Lincoln Street. The officers pulled the car over and approached it, with Officer Kakley on the driver's side and Officer Asher on the passenger side. Officer Kakley recognized the driver as the same Jamal Edwards he had viewed in the photograph the previous night. The defendant was not wearing a shirt at the time and appeared very nervous. Officer Kakley asked for the defendant's license and registration; he observed that the defendant's hands were shaking and that he looked down toward the floor of the passenger side several times. Before the defendant could comply, Officer Asher stated, "[I]t looks like there is a gun under the passenger side sticking out from under the passenger seat." As a result, the defendant was taken from the vehicle and placed in the rear of the cruiser. Officer Asher then recovered a pistol from under the passenger seat. A records check revealed that the defendant did not have a permit for the firearm, and at that point, the defendant was placed under arrest. Upon conducting an inventory search of the vehicle before it was towed, Officers Asher and Kakley discovered marijuana and "crack" cocaine.

The defendant unsuccessfully moved to suppress the handgun and other contraband found in the vehicle, arguing that the stop of his car on August 3, 2002, was unlawful.[4] After his guilty verdicts, the defendant filed a motion for new trial, which, for the first time, alleged that "[t]he police may not stop a vehicle to investigate the possible commission of a misdemeanor that allegedly occurred the previous day where there is no reason to suspect that the illegal activity is ongoing." The motion judge,

---

[4]Specifically, the defendant argued that the "evidence was not seized pursuant to a lawful arrest, was not in plain view, there was no probable cause, no warrant, no exigent circumstances, it was not seized pursuant to a lawful stop-and-frisk, the search was not consented to, and the evidence was seized in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, Article 14 of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts, and M.G.L. c. 276."

who had ruled on the initial motion to suppress and also presided at the trial, rejected this argument and denied the motion for new trial.

*Waiver.* The defendant argues that the police lacked authority to stop the defendant eighteen hours after the shooting because the crime, a misdemeanor,[5] had been "completed." This argument was raised for the first time in the defendant's motion for new trial; it was not argued in his motion to suppress. "This he may not do." *Commonwealth* v. *Lodge*, 431 Mass. 461, 474 (2000), quoting from *Commonwealth* v. *Sawyer*, 389 Mass. 686, 692 (1983).

A motion to suppress "shall state the grounds on which it is based and shall include in separately numbered paragraphs all reasons, defenses, or objections then available, which shall be set forth with particularity." Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979). "This requirement alerts the judge and the Commonwealth to the suppression theories at issue, and allows the Commonwealth to limit its evidence to these theories." *Commonwealth* v. *Silva*, 440 Mass. 772, 781 (2004). See *Commonwealth* v. *Johnston*, 60 Mass. App. Ct. 13, 17-19 (2003). As the defendant failed to raise this issue in his motion to suppress, the Commonwealth was under no obligation to provide evidence of the officers' authority to investigate a completed misdemeanor. In any event, as discussed below, there is no merit to the defendant's new theory; the defendant's motion for new trial, therefore, was appropriately denied.

*Probable cause to arrest.* "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting from *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). Possession of a firearm without a license, in violation of G. L. c. 269, § 10(*a*), is a felony. Where the police reasonably believe that a person is committing a felony, they may effect an arrest in a public place without a warrant. See *Commonwealth* v. *Ha-*

---

[5]The crime of discharging a firearm within 500 feet of a dwelling, see G. L. c. 269, § 12E, is a misdemeanor.

*son*, 387 Mass. 169, 173 (1982), citing *Commonwealth* v. *Holmes*, 344 Mass. 524, 525 (1962). While the "unadorned fact" of possession of a firearm is not sufficient to establish probable cause to believe that a defendant is illegally in possession of the weapon, *Commonwealth* v. *Couture*, 407 Mass. 178, 181, cert. denied, 498 U.S. 951 (1990), "[e]vidence of possession of a gun, combined with criminal activity and flight, is enough to warrant a finding of probable cause to arrest for unlawfully carrying a firearm." *Commonwealth* v. *Brookins*, 416 Mass. 97, 104 (1993).

Here, unlike *Couture*, more than just mere possession of a handgun was alleged. The suspect was not only reportedly in possession of a firearm, but also implicated in its shooting. This criminal activity, combined with the defendant's flight from the scene, gave the officers reason to believe that the defendant had no license to carry the firearm. Compare *Brookins*, *supra* at 98-99 (police officer "observed [defendant] firing a gun at other people and then fleeing"). Therefore, the officers were authorized to arrest the defendant without a warrant.

*Completed misdemeanor.* Even if the police did not have probable cause to arrest, they certainly had adequate grounds to conduct an investigatory stop. The fact that the "shots fired" incident occurred eighteen hours prior to the stop of the defendant's vehicle did not render the stop and subsequent search unlawful. In support of his argument, the defendant cites *United States* v. *Hensley*, 469 U.S. 221, 229 (1985), in which the United States Supreme Court held that the police have authority to conduct an investigatory stop if they have a "reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed *felony*" (emphasis added).

Although the Court expressly declined to rule on whether investigatory stops of all past crimes (including misdemeanors) are permitted, we see nothing in the rationale of *Hensley* to bar its application to the facts of this case. "[T]he police are not automatically shorn of authority to stop a suspect in the absence of probable cause merely because the criminal has completed his crime and escaped from the scene." *Id.* at 228. As the Court reasoned:

"[W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or *crimes involving a threat to public safety*, it is in the public interest that the crime be solved and the suspect detained as promptly as possible" (emphasis added).[6]

*Id.* at 229.

The defendant argues that this is not a case involving a threat to public safety. We disagree. Though a violation of G. L. c. 269, § 12E, for discharging a firearm within 500 feet of a dwelling is a misdemeanor, it is a crime involving a threat to public safety. See *Commonwealth* v. *Johnson*, 36 Mass. App. Ct. 336, 337 (1994) ("[p]articularly in a modern urban setting, where the carrying of guns in public is, if not by itself indicative of a crime, . . . [it is, nonetheless,] at least a matter of serious public safety concern to the police . . . warrant[ing] investigation by the police"); *Commonwealth* v. *Doocey*, 56 Mass. App. Ct. 550, 557-558 (2002) (report of shots just fired presented a concern for public safety). That the offense occurred eighteen hours earlier does not reduce the public safety concern.[7]

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[6]The fact that the police here did not attempt, for reasons unclear from the record, to search for the defendant after locating his motor vehicle on the night of the incident does not affect our analysis that it was permissible for the police to stop and question the defendant the following day.

[7]As to the defendant's final argument concerning the verdict slip, the defendant agreed to the procedure utilized and cannot now complain as to its validity.

The defendant was charged with unlawful possession of a firearm without a

license (count three), after being previously convicted of any combination of three violent crimes or serious drug offenses (count four); and unlawful possession of (that same) firearm without a license (count five), as a subsequent offender (count six). Thus, the unlawful possession of the single loaded handgun recovered from the defendant's car was the underlying offense for the two sentencing enhancement counts (four and six). After the Commonwealth's closing arguments, it was decided, without objection, to submit only one verdict slip for possession of a firearm (count five) instead of two because there was only one firearm and the court did not wish to confuse the jury. The defendant, through counsel, explicitly agreed to combine counts three and five into one verdict slip and to allow the Commonwealth to proceed with the enhanced sentencing provision of both charges in the event of a conviction.

We do not think the combination of counts three and five created a substantial risk of a miscarriage of justice. All parties were aware that there were two indictments under G. L. c. 269, § 10(a), and the indictments gave the defendant notice that he was being charged with (1) unlawful possession of a firearm after having been convicted of three violent crimes or drug offenses; and (2) unlawful possession of a firearm as a subsequent offender. The jury were correctly instructed on the elements of unlawful possession of a firearm and found the defendant guilty, and a separate jury at the sentencing trial convicted the defendant of the sentencing enhancements (counts four and six).